Temujin KENSU, Plaintiff–Appellant,

v.

Allen C. HAIGH; Tom Bell; Yvonne Murzen; Sandy Grant; Linda Hayes, Defendants–Appellees.

No. 94–2125.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 22, 1996.

Decided June 19, 1996.

Temujin Kensu (briefed), New Haven, MI, pro se.

E. Michael Stafford (briefed), Asst. Atty. Gen., Office of Atty. Gen., Corr. Div., Lansing, MI, for Allen C. Haigh, Tom Bell, Yvonne Murzen, Sandy Grant, Linda Hayes.

Before: MARTIN and RYAN, Circuit Judges, and KATZ, District Judge.*

KATZ, District Judge.

Temujin Kensu, a pro se Michigan prisoner, appeals a district court order dismissing his civil rights complaint filed pursuant to 42 U.S.C. § 1983. For the following reasons, we AFFIRM in part and VACATE in part the district court's judgment and REMAND the case for further proceedings consistent with this opinion.

## I.

Kensu is a prisoner in the custody of the Michigan Department of Corrections. On October 22, 1993, Kensu filed a complaint against the defendants in their individual and official capacities alleging that they violated several of his constitutional rights. Kensu sought, and still seeks, monetary, declaratory and injunctive relief. Over Kensu's objections, the district court adopted the magistrate's report and recommendation and granted summary judgment for the defendants. This timely appeal followed.

With the exception of Kensu's claim that the defendants improperly examined his legal mail outside of his presence, we conclude that the district court properly granted summary judgment for the defendants because there is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Loschiavo v. City of Dearborn*, 33 F.3d 548, 550–51 (6th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995).

## II.

Kensu has claimed that the defendants examined his "legal mail" outside of his presence. We conclude that the district

---

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

court improperly granted summary judgment for the defendants on that claim. Upon request, a Michigan prisoner's "legal mail" must be examined in his presence. *See Muhammad v. Pitcher*, 35 F.3d 1081, 1083–84 (6th Cir.1994). The undisputed facts below revealed that a visitor deposited three boxes of material addressed to Kensu at the prison. The boxes were from Kensu's attorney, were clearly marked as legal mail, and contained confidential legal materials. The defendants concluded that, since the boxes did not arrive in the prison through the United States mail or by a private delivery service such as UPS, but rather were delivered by a private individual, the boxes did not constitute "legal mail." Such conclusion was erroneous. Merely because the materials were not delivered by U.S. mail does not render those packages incapable of being considered "legal mail."

This Circuit has not previously defined the term "legal mail". While some circuits have indicated that other forms of delivery of legal materials are appropriate, this Circuit has always used the term "legal mail" to *imply* the use of the U.S. Postal Service as the means of delivery. Merely because the materials were not delivered by the U.S. Postal Service does not render those packages incapable of being considered "legal mail." In this Circuit as well as others the sanctity of legal mail has long been recognized. *Muhammad, supra, Knop v. Johnson*, 977 F.2d 996 (6th Cir.1992), *cert. denied sub nom., Knop v. McGinnis*, 507 U.S. 973, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993); *Lavado v. Keohane*, 992 F.2d 601 (6th Cir.1993); *Parrish v. Johnson*, 800 F.2d 600 (6th Cir.1986). The protection of the right afforded prisoners to receive legal mail and to have it opened by prison officials in the addressee's presence has thus been recognized. Most recently, in a case involving different issues than those before us, the U.S. Supreme Court, in a *per curiam* opinion, addressed the sanctity of prisoners' rights:

> When a litigant is subject to the continuing coercive power of the Government in the form of imprisonment, our legal traditions reflect a certain solicitude for his rights, to which the important public interests in judicial efficiency and finality must occasionally be accommodating.

*Stutson v. United States*, —— U.S. ——, ——, 116 S.Ct. 600, 603, 133 L.Ed.2d 571 (1996).

▪ The Supreme Court and this Circuit have repeatedly held that a prisoner has some First Amendment rights to receive mail, subject to the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security. That case law has also acknowledged that the opening of "legal mail" should generally be in the inmate's presence in accordance with appropriately drafted and uniformly applied regulations. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

▪ The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts in the cases previously cited. We emphasize that it is the content and not the method of delivery which is the subject of the protected right. The utilization of the term "legal mail" in referring to this fundamental right does not appear to have resulted in any further definition of that term. Webster defines mail as "the bags of letters and the other postal matter conveyed under public authority from one post office to another" and further refers to mail in the context of a nation's postal system. In this day of alternative means of delivery of materials, the dictionary definition of "mail" is hardly appropriate in the context of delivery of legal materials. Therefore, we today define "legal mail" to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials, via the U.S. Postal Service or alternative private courier services, and hand delivery.

The foregoing must be modified by the right of prison officials to continue to screen all packages to afford protection to the prison employees and the addressee against any devices prohibited by appropriate federal or state laws or prison rules and/or regulations. Should screening detect the presence of any prohibited devices or instruments, any such

packages may be opened for inspection outside the presence of the prisoner-addressee.

■ The foregoing definition of "legal mail" as well as the language of *Muhammad*, 35 F.3d at 1083–84, dictates that in this case prison officials should have treated the legal materials delivered to Kensu as "legal mail" and, therefore, should not have examined the contents outside Kensu's presence. Because there is not a genuine issue of material fact the proper disposition of this claim is clear under relevant law. However, to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail. As for Kensu's claim seeking monetary relief, we must remand this issue to the district court for further review of Kensu's claim for damages and of the defendants' possible defense of qualified immunity.

### III.

■ The defendants met their initial burden of showing an absence of evidence to support Kensu's denial of access to the courts claim. Prison officials may not erect any barriers that impede an inmate's access to the courts. *Knop v. Johnson*, 977 F.2d at 1009. An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation. *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir.1993); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir.1985). Kensu alleged that the defendants confiscated legal papers from his prison cell on August 10, 1993. The defendants averred that they confiscated most of Kensu's legal papers on August 10 because his legal materials filled eight foot-lockers and posed a potential hazard if quick departure from the cell was required. Kensu was still able to request portions of his legal materials and they were provided to him within two days of his request. On September 10, 1993, Kensu moved to a single cell and all of his legal materials were returned to him. The defendants contend that Kensu was not prejudiced by their action because the legal materials were confiscated for only a month and Kensu still had access to those materials by requesting them.

Kensu has not designated specific facts showing a genuine issue for trial on this claim. He argues that he was prejudiced because he was unable to properly prepare a supplemental brief for the Michigan Court of Appeals in a proceeding involving Kensu's conviction. The record reveals that the Michigan Court of Appeals ordered the supplemental brief on July 14, 1993. While the order does not state when the brief was due, Kensu had approximately a month to prepare this brief before his legal materials were confiscated on August 10. Further, Kensu could still obtain access to his materials by requesting them from the defendants. Kensu also acknowledges that he was able to file the brief. Consequently, he suffered no prejudice as a result of the defendants' actions.

■ Kensu also alleges that the defendants denied him access to the courts by not permitting him to receive a copy of a cassette tape. The tape was from Kensu's attorney and allegedly contained a statement from a witness in Kensu's criminal trial retracting his testimony. The defendants averred that they do not permit cassette tapes to be brought into the prison by private individuals because contraband can be smuggled inside the cassettes. They offered to arrange for Kensu's attorney to come to the prison and play the cassette for him, but Kensu refused this arrangement. They also averred that Kensu receive a transcript of the tape and was not prejudiced by not receiving the tape.

Kensu again has not designated specific facts showing a genuine issue for trial. While he asserts that he needed to listen to the tape, he has not offered any reason to show why his review of the transcript was inadequate. While he further argues in a conclusory manner that the tape was highly exculpatory and valuable for his appeal, he has offered no specific facts or evidence to support his contention. Therefore, he has not shown that he was prejudiced when the defendants refused to allow him to receive this tape.

### IV.

Kensu's next allegation centers on the defendants' retaliatory conduct. We find that

Kensu's claim is conclusory and unsupported by any facts or evidence. *See generally Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir.1987). Therefore, the district court properly dismissed Kensu's claim that the defendants' actions were taken in retaliation against him.

## V.

Finally, Kensu has waived his right to challenge the dismissal of his free exercise of religion claim. Supplementary to his denial of access to the courts claim, Kensu also alleged that the defendants confiscated some religious materials, thereby interfering with his free exercise of religion. Kensu did not raise this argument in his objections to the magistrate's report and recommendation and, consequently, has waived his right to raise this issue on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

## VI.

Accordingly, we AFFIRM in part and VACATE in part the district court's judgment and REMAND the case for further proceedings.