Everett HADIX, et al. (96–2387);
Gary Knop, et al. (96–2397),
Plaintiffs–Appellees,

v.

Perry M. JOHNSON, et al.,
Defendants–Appellants.

Nos. 96–2387, 96–2397.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1997.

Decided April 1, 1999.

As Amended on Denial of Rehearing and
Rehearing En Banc July 14, 1999.

Patricia A. Streeter (argued and briefed), Detroit, MI, Elizabeth R. Alexander, Chief Staff Counsel (argued), National Prison Project, Washington, DC, for Plaintiffs–Appellees.

Michael Barnhart, Detroit, MI, for Plaintiffs–Appellees in docket No. 96-2387.

Susan Przekop–Shaw (argued and briefed), Office of Attorney General, Corrections Division, Lansing, MI, for Defendants–Appellants.

Before: GUY, NELSON, and DAUGHTREY, Circuit Judges.

DAUGHTREY, J., delivered the opinion of the court, in which DAVID A. NELSON, J., joined. RALPH B. GUY, JR., J. (pp. 406–08), delivered a separate dissenting opinion.

## OPINION

DAUGHTREY, Circuit Judge.

In these two cases, now consolidated, the Director of the Michigan Department of Corrections and other state corrections officials contend that the district court erred in granting a preliminary injunction and system-wide final injunctive relief to the plaintiffs, a class of inmates at five correctional facilities in Michigan who brought suit alleging that the defendants had violated their constitutional right of access to the courts. The district court granted both preliminary and permanent injunctive relief in response to the plaintiffs' emergency motion to prevent the defendants from cutting off funding for Prisoners' Legal Services of Michigan. The defendants contend specifically that the district court failed to properly take into account the impact of *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), a recent Supreme Court case, and the Prison Litigation Reform Act, a federal law that went into effect in April 1996. We conclude that these cases should be remanded for factual findings and a determination on the merits consistent with this opinion. Because of the necessity of a remand, we leave undisturbed the preliminary injunction ordered by the district court.

### *FACTUAL AND PROCEDURAL HISTORY*

This lawsuit began over 15 years ago, in 1982, when the Michigan Department of Corrections (MDOC) threatened to stop funding Prisoners' Legal Services of Michigan (PLSM). PLSM had been established in 1976 by grants from the State Bar of Michigan and the Law Enforcement Assistance Administration, and in 1978 the MDOC began voluntarily funding the office. In 1982, the District Court for the Eastern District of Michigan issued a preliminary injunction ordering the MDOC to maintain funding for PLSM until further order of the court, and in 1988 the court found that the plaintiffs' right of access to

the courts was being violated and ordered modifications to PLSM. *Hadix v. Johnson,* 694 F.Supp. 259 (E.D.Mich.1988), *rev'd, Knop v. Johnson,* 977 F.2d 996 (6th Cir.1992). *Hadix* required the MDOC to provide attorneys for prisoners as a matter of law. *Id.* at 293. Prisoners at several facilities not covered by the *Hadix* lawsuit brought a separate action against prison officials in the Western District of Michigan in which they alleged, among other things, the denial of their right of access to the courts. The district court granted them relief as well. *Knop v. Johnson,* 667 F.Supp. 467 (W.D.Mich.1987) (finding of liability); 685 F.Supp. 636 (W.D.Mich. 1988) (remedial order), *rev'd, Knop v. Johnson,* 977 F.2d 996 (6th Cir.1992).

We reviewed the two district court cases on consolidated appeal and affirmed the courts' conclusion that the defendants' legal access system, while sufficient for prisoners capable of making effective use of legal materials, was constitutionally insufficient for prisoners who "cannot read and write English, or who lack the intelligence necessary to prepare coherent pleadings, or who, because of protracted confinement in administrative or punitive segregation or protective custody, may not be able to identify the books they need." *Knop,* 977 F.2d at 1005–06. In arriving at the conclusion that "something more was required in the way of paralegal assistance," *id.* at 1006, we held that "[t]he records contain evidence of a number of specific instances where unassisted inmates suffered individualized harm because of inability to use library resources properly." *Id.*

Mindful of the "wide discretion" and deference due to state legislatures and prison administrators with regard to the management of prisons, we then vacated portions of both lower courts' remedies as too intrusive and remanded the cases jointly to the Western District of Michigan for development of less intrusive remedies. Based upon this court's decision that a constitutional violation existed, the MDOC agreed to maintain PLSM at the *Hadix* facility,

pending the district court's order. According to the defendants, as soon as a legal-writer program was ready, they planned to discontinue funding for PLSM and remove all attorneys providing legal services from within *Hadix* facility.

Upon remand, the district court ordered MDOC officials to develop a remedial plan consistent with our decision. The defendants proposed a legal-writer program that would require qualified staff to assess prisoners for their ability to read and write English and for their possession of the intelligence necessary to prepare coherent pleadings. Eight months after the defendants submitted their proposed plan, the plaintiffs filed a response contending that parts of the plan did not comply with this court's rulings and asking the district court to reject the proposed plans. Two weeks after the defendants submitted revised proposed plans in late February 1994, the district court conducted a hearing, as a result of which it found the plans to be incomplete. The day after the hearing, the district court issued its own set of interrogatories requesting further information.

In October 1994, the district court conducted an evidentiary hearing on defendants' proposed revised plans and heard from four witnesses about the plans' adequacy. The plaintiffs' two witnesses provided testimony about the reading level below which prisoners would not have the ability to effect meaningful access to the courts on their own; the failure of the program to ensure control, supervision, and accountability; and the inadequacy of the program's curriculum for legal writers in the area of post-conviction relief. The defendants presented two witnesses who testified to the development and the administration of the legal assistance program.

Two months later, in December 1994, the court issued an interim order requiring the defendants to revise the plan in several respects and directing them to implement the plan on a trial basis at one of the

facilities subject to the court's jurisdiction. The interim order also required the defendants to monitor and provide an evaluation of the plan and provided for a court monitor. After six months, the court was to evaluate the results and adopt a final plan incorporating "features and approaches that prove to be necessary and effective in practice." Once the final evaluation report was received, "[t]he Court m[ight] then extend the trial implementation for further evaluation, or consider modifications to the plan under trial implementation, expansion of the trial implementation to other sites, and/or adoption of final plans."

In June 1995, the defendants filed their revised plan and proceeded to implement the plan as ordered by the district court. The director of the MDOC appointed a special administrator, Nancy Zang, to oversee the program. The pilot project ran between June and December 1995, and the defendants filed their final evaluation of the project in February 1996, to which the plaintiffs filed objections in March 1996. In late March, the district court issued an order requiring the defendants to submit a final plan and set a hearing to consider its adoption.

On June 3, 1996, the defendants filed their proposed final plan for a legal-writer program, in which prisoner "legal writers" would provide assistance to other prisoners whose reading level was at or below a sixth-grade level. Legal writers would assist these eligible prisoners in preparing "pleadings necessary to initiate the case." The legal writers' work would be monitored "during the first 90 days following implementation of services at each facility," and the "work product of all new legal writers" was to be reviewed "as deemed necessary." Although this final plan provided the guidelines for eligibility, for legal-writer training, and for the scope of services, the plan was not as detailed as the district court had ordered in December 1994 because, the defendants now argue, the Prison Litigation Reform Act, which had gone into effect on April 26, 1996,

"limit[ed] federal judicial relief to that which is narrowly drawn and extends no further than necessary to correct a violation of a federal right." The plaintiffs filed an opposition to the defendants' final plan on June 17, 1996.

The district court held another evidentiary hearing about the final plan on June 20, 1996, a few days before the Supreme Court rendered the *Lewis v. Casey* decision on June 24. After *Lewis* was issued, the district court ordered the parties to address the impact of the new decision on this case. In response to this order, the defendants submitted a brief arguing that under *Lewis,* the plaintiffs lacked standing to seek prospective relief because they had failed to demonstrate that they had suffered "actual injury." The defendants asked the district court to vacate the interim orders and dismiss this action as a matter of law.

During this same period of time, the MDOC decided that as a result of the *Lewis* decision, it no longer needed to continue funding PLSM, and it informed the agency in a letter dated August 16, 1996, that it had until September 30, 1996, to vacate its offices at the *Hadix* facility and to remove all of its personal property.

On September 25, 1996, the plaintiffs filed an emergency motion for a temporary restraining order and a preliminary injunction to require that MDOC maintain PLSM at the *Hadix* facility. The district court held a hearing on this motion five days later, granted the preliminary injunction, and issued a final opinion and order both approving the defendants' final plans with several modifications and also requiring defendants to maintain funding for PLSM until the defendants implemented the legal access plan as modified and approved by the court.

In approving the final plans with modifications, the district court ostensibly considered the plaintiffs' underlying access-to-courts claim in light of both the *Lewis* decision and the PLRA. The court ruled

that our prior holding in this case—that "the records contain evidence of a number of specific instances where unassisted inmates suffered individualized harm because of inability to use library resources properly"—satisfied the plaintiffs' burden of proving "actual injury" as defined and required by *Lewis*. *Knop*, 977 F.2d at 1006. The district court also ruled that the relief it ordered was narrowly tailored to the inadequacies that caused the actual injury. Finally, the court granted the preliminary injunction mandating that defendants maintain funding for PLSM until the Legal Access Plan adopted by the district court is implemented.

From these orders, the defendants now appeal.

### ANALYSIS

### I. Standard of Review

■ We review the defendants' challenge to the district court's issuance of a preliminary injunction for abuse of discretion. *See Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir.1995). "In determining whether the district court abused its discretion, we review the district court's findings of fact for clear error and its legal conclusions *de novo.*" *Id.* Furthermore, "the district court's weighing and balancing of the equities is overruled only in the rarest of cases." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir.1997).

■ In the cases at bar, the district court granted not only the preliminary injunction but also final injunctive relief, because the court found that the plaintiffs had already established the defendants' liability in *Knop v. Johnson*, 977 F.2d at 1006. We review *de novo* the legal determinations underlying the district court's

decision to order final relief, and we review the court's factual findings for clear error.

■ One factor in assessing the appropriateness of the district court's grant of a preliminary injunction is the likelihood of success of the underlying lawsuit (in which plaintiffs seek permanent injunctive relief). Therefore, because our conclusions with regard to the district court's legal basis for ordering final injunctive relief in this case will bear on our decision regarding the district court's grant of a preliminary injunction, we consider the court's decision regarding permanent injunctive relief first.

### II. Standing: "Actual Injury" Under Lewis v. Casey

In *Knop v. Johnson*, the earlier appeal in this case, we determined that "there are at least some Michigan prisoners who have been denied the type of access to the courts *required under current Supreme Court doctrine.*" *Knop*, 977 F.2d at 999. The underpinning for this conclusion was the Supreme Court's decision in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), in which the Court held that the fundamental constitutional right of access to the courts requires prison authorities to assist prisoners in the preparation and filing of meaningful legal papers by providing them with adequate law libraries or adequate assistance from persons trained in the law.

In the intervening opinion in *Lewis v. Casey*, however, the Supreme Court re-examined *Bounds* and considerably narrowed its holding. Ruling that *Bounds* did not create an abstract, free-standing right to access to a law library or to legal assistance, the Court held that to establish standing,[1] an inmate must demonstrate an "actual injury," which, the Court said, cannot be shown "simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical

---

1. The requirement of showing actual injury to prove a *Bounds* violation, the *Lewis* court emphasized, "derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 116 S.Ct. at 2179.

sense." *Lewis,* 116 S.Ct. at 2180. Instead, the Court held, "the inmate ... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim."

 Moreover, when the plaintiffs in a *Bounds* action are a class of inmates alleging a systemic violation of their right of access to the courts, under *Lewis* they must show "widespread actual injury." *Id.* at 2179. The Court made it clear that the "[district] court's failure to identify anything more than isolated instances of actual injury renders its finding of a systemic *Bounds* violation invalid."[2] *Id.* The defendants contend, therefore, that under *current* Supreme Court doctrine, the injunctive relief granted by the district court should be vacated for failure to establish the degree of actual injury required by *Lewis.*

Moreover, they argue that under the terms of the PLRA, the action should be remanded to the district court with instructions to dismiss the case, conditioned upon the state putting into effect the remedial plan it offered to the court.

The plaintiffs argue, and the district court held, that the Supreme Court's decision in *Lewis* did not change the law in this circuit, but merely resolved a split among the circuits concerning whether actual injury is required to establish liability in a lawsuit alleging a violation of the right of access to the courts. *Lewis* arose from the Ninth Circuit, which was among the circuits that had previously held that no proof of actual injury was required in lawsuits involving core aspects of the right of access to the courts. *See Sands v. Lewis,* 886 F.2d 1166 (9th Cir.1989). The Sixth Circuit, on the other hand, had held that no constitutional violation exists in any case if "no particular prisoner was actually impeded in his access to the courts."

*Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985).

In *Walker,* the plaintiffs claimed that they were not given adequate access to legal materials, and we remanded the case for a determination of whether the denial of access had actually caused any prisoner harm. We explained that " '[i]f appellant [the prisoner] could show that he has somehow been prejudiced in any of his various lawsuits, he might perhaps have a legitimate claim.' " *Id.* (quoting *Twyman v. Crisp,* 584 F.2d 352, 357 (10th Cir.1978)). In *Knop,* we cited the *Walker* standard with approval. 977 F.2d at 1000. Just before the *Lewis* opinion was issued, we again confirmed our position that a prisoner who does not show any prejudice fails to state a claim that prison officials denied him access to the courts. *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996).

The plaintiffs contend that because the Sixth Circuit's "actual injury" requirement is the same as the *Lewis v. Casey* "actual injury" requirement, we should follow the law of the case and leave undisturbed our finding of actual injury in *Knop,* 977 F.2d at 1000. The district court agreed and held that "[the plaintiffs] have already established the defendants' liability for a constitutional violation." Having found liability, the district court then proceeded to consider the appropriateness of the remedy.

 After careful study of these cases, we conclude that the *Lewis* "actual injury" requirement does differ from the one used by this court in *Walker* and *Knop.* In *Walker,* we held that a prisoner might have a "legitimate claim" if he could show that he had "somehow been prejudiced in any of his various lawsuits," 771 F.2d at 932, whereas in *Lewis* the Supreme Court held that only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action. *Lewis,* 116 S.Ct. at 2181 & n. 3. By explicitly

---

**2.** In *Lewis,* the prisoners were able to establish only two instances of actual injury as defined by the Supreme Court. *Lewis,* 116 S.Ct. at 2178–79.

requiring that plaintiffs show actual prejudice to non-frivolous claims, *Lewis* did in fact change the "actual injury" requirement as it had previously been applied in this circuit. In cases prior to *Lewis*, such as *Knop* and *Walker*, we did not mention nor make any findings with regard to the validity of the underlying claims that had allegedly been impeded in their presentation by the inadequacies in the prison's legal access program. It is also apparent from the evidence in the present case that no such requirement was imposed by the district court in reviewing the record for actual injury.

 Because it is impossible to determine from the record now before us whether the underlying claims were in fact non-frivolous, we conclude that we must remand this case (yet again) for factual findings on this issue. It will be necessary for the district court to determine, first, whether any of the named plaintiffs are still incarcerated and active in the lawsuit and, second, whether they have suffered "actual injury."[3] If the record fails to establish standing under *Lewis*, the action must be dismissed. If actual injury can be demonstrated, the district court must determine whether that injury is widespread among the class of plaintiffs. If the record fails to establish widespread injury, the district court should dismiss the action as to all but the named plaintiffs who have established actual injury.

### III. Remedy

 Without a finding of system-wide actual injury, as defined by *Lewis*, we are not in a position to determine whether the

---

**3.** If the named plaintiffs are no longer incarcerated within the Michigan Department of Corrections, their claims are now moot. Mootness of the original named plaintiffs' claims, however, does not moot the class action, provided a live controversy remains between the defendants and the plaintiff classes. *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404, 445 U.S. 388, 63 L.Ed.2d 479 (1980); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 753, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa*, 419 U.S. 393,

specific remedy adopted by the district court is appropriate. Under *Lewis*, the remedy must be specifically tailored to address only those inadequacies that produced the injury-in-fact that the plaintiffs have yet to establish. *See Lewis*, 116 S.Ct. at 2184. Moreover, under the PLRA, any relief ordered by the district court must be "narrowly drawn," must "extend[ ] no further than necessary to correct the violation" found under *Lewis*, and must constitute "the least intrusive means necessary to correct th[at] violation." 18 U.S.C. § 3626(a)(1). Under the same subsection of the Act, the district court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

### CONCLUSION

For the reasons set out above, we hold that the district court's grant of final injunctive relief must be **REVERSED** and the case **REMANDED** for a determination of "actual injury" as required by *Lewis v. Casey*. Because the plaintiffs have not yet established their entitlement to a remedy, we cannot pass on the appropriateness of the specific remedy ordered by the district court, but we **AFFIRM** the district court's grant of a preliminary injunction to the plaintiffs in order to maintain the status quo until a hearing on the merits can be concluded and a new determination made.

### DISSENT

RALPH B. GUY, JR., Circuit Judge, dissenting.

In *Knop v. Johnson*, 977 F.2d 996, 999 (6th Cir.1992), an earlier appeal in this

---

401–02, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In the context of an access to courts case under *Lewis*, named plaintiffs with mooted claims no longer constitute appropriate class representatives under Federal Rule of Civil Procedure 23. To satisfy concerns raised under Rule 23, the appropriate solution would be for the district court to allow for the substitution of class representatives with live claims, asserting actual injury as defined under *Lewis*.

case, we determined that "we are satisfied that there are at least some Michigan prisoners who have been denied the type of access to the courts *required* under current Supreme Court doctrine." (Emphasis added.) The underpinning for this conclusion was the Supreme Court's decision in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

Recently, the Supreme Court has revisited *Bounds* and considerably narrowed its holding. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (because *Bounds* did not create an abstract free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense).[1]

In recognition of the narrowing of *Bounds* by *Lewis,* the court in this appeal concludes that the *Lewis* " 'actual injury' requirement does differ from the one used by this court[.]" Since in *Knop* we did conclude that entitlement to a remedy had been established, this statement can only mean that *Lewis* requires us to now repudiate the conclusion reached in *Knop.* On this point, I am in complete agreement with the court. Where I part company with the majority, however, is in the ordering of a remand to allow the plaintiffs another opportunity to establish "actual injury."

The defendants have advanced a proposal that is designed to provide meaningful access to the courts. In response, the plaintiffs have done exactly what *Lewis* says they cannot do.

Although *Bounds* itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35–year

line of access-to-courts cases on which *Bounds* relied. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. One such experiment, for example, might replace libraries with some minimal access to legal advice and a system of court-provided forms such as those that contained the original complaints in two of the more significant inmate-initiated cases in recent years, *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); and *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)—forms that asked the inmates to provide only the facts and not to attempt any legal analysis. *We hardly think that what we meant by "experimenting" with such an alternative was simply announcing it, whereupon suit would immediately lie to declare it theoretically inadequate and bring the experiment to a close.* We think we envisioned, instead, that the new program would remain in place at least until some inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.

116 S.Ct. at 2180–81 (citations and footnotes omitted) (emphasis added).

Additionally, the court makes only a passing reference to the Prison Litigation Reform Act (PLRA or Act), 18 U.S.C. § 3626. The Act is not factored into the analysis. The PLRA, which was intended to limit judicial involvement in prison administration, limited prospective relief in prison conditions cases to relief that was

 no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that

---

1. Justice Thomas stated in his concurring opinion: "And though we have not overruled *Bounds,* we have undoubtedly repudiated its reasoning in our consistent rejection of the proposition that the States must provide counsel beyond the trial and first appeal as of right." 116 S.Ct. at 2195.

such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

*Id.* § 3626(a)(1)(A).

In my view, when *Lewis* and the PLRA are read together, they dictate a result different than that reached by the court. I would remand and order a dissolution of the temporary injunction and dismissal of this action, conditioned upon the state putting into effect the remedial plan it offered to the court. After that has been accomplished, if an individual inmate feels he or she can establish a denial of the right to present a non-frivolous claim to a court of competent jurisdiction, a new *individual* action may be brought.[2] On access to court claims, class actions will generally not be a suitable vehicle for bringing suit due to the highly individualized nature of the proof of an "actual injury."[3]

---

**2.** As *Lewis* makes clear, it is not just any alleged denial of access that will trigger a constitutional violation claim:

> Finally, we must observe that the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated....

116 S.Ct. at 2181.

**3.** As Justice Scalia points out in *Lewis:*

Justice SOUTER suggests that he would waive this actual-injury requirement in cases "involving substantial, systemic deprivation of access to court"—that is, in cases involving " 'a direct, substantial and continuous ... limit on legal materials,' " "total denial of access to a library," or " '[a]n *absolute* deprivation of access to *all* legal materials,' " *post,* at 2204–05, and n. 2. That view rests upon the expansive understanding of *Bounds* that we have repudiated.

*Lewis,* 116 S.Ct. at 2181 n. 4.