EASTERBROOK, Circuit Judge,
dissenting.
Arbitrator Herbert M. Berman found that Anheuser-Busch and its drivers’ union had modified their written collective bargaining agreement by post-signing conduct. The district court enforced that decision. Now this court reverses. My colleagues’ separate opinions rely principally on the agreement’s integration clause, which forbids any reference to pre-signing conduct and negotiating history. The arbitrator’s decision, my colleagues believe, effectively bound the employer to continue its pre-agreement treatment of two-driver routes, thus offending the integration clause.
Because the post-agreement conduct was a continuation of pre-agreement conduct, this is a possible understanding of what happened, but it is not an inevitable one. Arbitrator Berman recognized that the zipper “clause invalidates prior agreements and prior practices not incorporated into the written contract” (see page 22 of his opinion). He wrote that Anheuser-Busch modified the deal, to the union’s benefit, when it continued paying the higher rates for two months after the new collective bargaining agreement became effective. This may be right or wrong — if our review were plenary, I would join my colleagues in holding that it is wrong — but it does not transgress the integration clause. It is an effort to interpret the contract by reference to post-signing conduct, and a collective bargaining agreement may be altered by the post-signing acts of the party sought to be bound. See Transportation-Communication Employees v. Union Pacific R.R., 385 U.S. 157, 160-61, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); see also International Business Lists, Inc. v. American Telephone & Telegraph Co., 147 F.3d 636, 641 (7th Cir.1998); Matuszak v. Torrington Co., 927 F.2d 320, 324 (7th Cir.1991). Judge Coffey denies the applicability of this principle on the ground that an integration clause (which negates the significance of pre-sign-ing words and conduct) makes posi-signing modification by conduct impossible. This reads into the clause more than it contains. But if, as Judge Coffey believes, matters *1147 turn on the meaning of the particular text in this zipper clause, that is itself a subject for the arbitrator, and a court’s disagreement with an arbitrator’s understanding of contractual language does not justify displacement of the arbitrator’s decision.
To see the difference between misinterpreting clear language and ignoring it, consider a clear federal statute — 42 U.S.C. § 1997e(a), the exhaustion requirement in the Prison Litigation Reform Act. This law provides that “No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.” Some courts of appeals concluded that, even if some administrative remedies are “available,” exhaustion is unnecessary unless these are the same remedies the prisoner seeks in court. Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), holds that this is not what the statute means: exhaustion always is required. Should the Supreme Court have said that the courts of appeals that had come to a different conclusion “ignored” § 1997e(a) or “dispensed their own brand of prison justice”? What it actually said is that those courts misinterpreted § 1997e(a). It is clear and comprehensive (just like the zipper clause in this collective bargaining agreement), but texts that seem clear to some readers may be understood differently by others. This difference need not imply that one side has ignored the text or decided on grounds extrinsic to it. Arbitrator Berman did not ignore or refuse to follow the integration clause; he discussed it and explained why, in his view, it does not have the effect that Anheuser-Busch and my colleagues attribute to it.
Nor does the award offend the clause forbidding the arbitrator to modify the contract. The arbitrator concluded that Anheuser-Busch had itself modified the deal, and nothing in this collective bargaining agreement forbids post-signing changes by the employer that benefit the employees. It would not be sound to read a no-arhitral-modification clause as if it were a no-arbitral-error clause (on the ground that if the arbitrator errs then he has effectively modified the contract); that would imply that courts intervene to correct all blunders. Likewise with the question whether an arbitrator has “exceeded his authority.” A court exceeds its authority when it acts without jurisdiction; so too with an arbitrator. But if the dispute is arbitrable, then the adjudicator acts “within his authority” even if the decision is bad on the merits. To say otherwise is to turn every interpretive error into a decision “in excess of authority” (because no arbitrator is “authorized to err”) and so to make every error (perhaps every “plain” error) a ground for refusing to enforce the award. The parties concede that the dispute at hand was arbitrable. Thus one cannot say that arbitrator Ber-man “exceeded his authority” because he may have misunderstood or misapplied an integration clause that we judges find clear. The Justices themselves sometimes infer exceptions to the seemingly clear and sweeping language of statutes. E.g., INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Even when a forceful dissent remarks on the lack of a textual basis for the maneuver (as in St. Cyr) the majority does not concede that it has either exceeded lawful authority or failed to interpret at all.
Judge Rovner and I agree that post-signing conduct by an employer may in principle create legal obligations as an alteration of the agreement. We agree, moreover, that arbitrator Berman acted in good faith and did not attempt to smuggle into the award preconceptions about la *1148 bor’s entitlements. He did not, for example, implement personal notions about the appropriate relative wages for one-driver and two-driver delivery systems. Likewise we agree that because the employer’s post-signing conduct is identical to its pre-signing conduct, it is very hard to disentangle the two — and that there is a corresponding temptation to enforce the pre-signing conduct in the name of post-signing acts. The arbitrator’s reference to “fairness” permits an inference that he took that forbidden step, and both of my colleagues fault him on this ground. Avoiding the “f” word in both contemplation and exposition promotes clear thought and accurate decision. Yet it cannot be that every opinion referring to “fairness” shows that the law and the parties’ dealings have been put to one side. If that were so, a goodly number of our own opinions would be suspect. Many a reference to “fairness” is just a code word for a genuine interpretive principle. The misleadingly named doctrine of “good faith and fair dealing” in contract law is an example. See L.A.P.D., Inc. v. General Electric Corp., 182 F.3d 402 (7th Cir.1997).
Having come this far together, Judge Rovner and I part company. She concludes that the arbitrator did not rely on Anheuser-Busch’s post-agreement conduct. By this she means that the arbitrator did not implement post-signing conduct “in and of itself’ (op. at 1145) — that is, taken in isolation from the pre-signing conduct. She also believes that the arbitrator was swayed at least in part by a desire to achieve a more fair outcome. I accept these as factual propositions but do not think they have legal consequences. How could an arbitrator sharply differentiate pre- from post-signing conduct? One was a continuation of the other. It is not sufficient to annul an award that an arbitrator might have acquiesced in a temptation to enforce pre-eontractual conduct in the name of fair play. Even judges often say that they reach one result over another in interpreting a contract because they think the result better on grounds of policy (a more concrete substitute for “fairness”). By ruling that considerations of this kind spoil an award my colleagues yield to a temptation of our own profession — to equate an interpretive error with failure to interpret the contract at all.
“[T]he question for decision by a federal court asked to set aside an arbitration award ... is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract.” Hill v. Norfolk & Western Ry., 814 F.2d 1192, 1194-95 (7th Cir.1987). Arbitrator Berman performed an interpretive task — one complicated by the rule that post-signing conduct can become a contractual obligation, and by the fact that the post-signing conduct continued a practice that predated the latest collective bargaining agreement, but an interpretive exercise nonetheless. Parties who want to preclude courts or arbitrators from treating their course of performance as altering the bargain have only to provide that deals may not be modified by conduct (or, more broadly, in any way other than writing). No such clause appears in this collective bargaining agreement. Let me harp on a vital point: to the extent that the real dispute is about the meaning and effect of the zipper clause, that is itself a matter of contractual interpretation on which the arbitrator’s view is conclusive. The conclusions on which Judge Rovner and I agree — that the arbitrator was not “acting in bad faith, [and that he did not] purposely set about to dispense his own brand of industrial justice” (op. at 1146) — should lead straight to an order enforcing the *1149 award, for if he was not ladling out “his own brand of industrial justice” then he must have been implementing the parties’ bargain as he understood it, rather than acting on extra-contractual grounds.
Last May the Supreme Court reiterated the principles that govern the enforcement of arbitral awards:
Courts are not authorized to review the arbitrator’s decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties’ agreement. Paperworkers v. Misco, Inc., 484 U.S. 29, 86, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). We recently reiterated that if an “ ‘arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,’ the fact that ‘a court is convinced he committed serious error does not suffice to overturn his decision.’ ” Eastern Associated Coal Corp. v. Mine Workers, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (quoting Misco, supra, at 38, 108 S.Ct. 364). It is only when the arbitrator strays from interpretation and application of the agreement and effectively “dispenses his own brand of industrial justice” that his decision may be unenforceable. Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator’s “improvident, even silly, factfinding” does not provide a basis for a reviewing court to refuse to enforce the award. Misco, 484 U.S. at 39, 108 S.Ct. 364.
Major League Baseball Players Ass’n v. Garvey, 532 U.S. 504, 121 S.Ct. 1724, 1728, 149 L.Ed.2d 740 (2001). I am willing to concede for the sake of argument that arbitrator Berman made a whopper of an error, the sort of thing that the Supreme Court called an “improvident, even silly” conclusion. Nonetheless, given the law laid down in Garvey and its predecessors, the award must be enforced' — for the parties delegated interpretation to an arbitrator, not a court. To equate error with non-interpretation is to vitiate the doctrine that awards must be enforced even if they reflect factual, interpretive, or legal blunders, see George Watts & Son, Inc. v. Tiffany & Co., 248 F.3d 577 (7th Cir.2001), and to deprive the parties of what they bargained for when they chose arbitration: swift, inexpensive, and final decision. Arbitration can be neither swift nor inexpensive if it is not also conclusive; otherwise parties are just adding one layer to those that courts provide already.