**Robert WINBURN, Plaintiff–Appellant.**

v.

**Barbara HOWE, et al., Respondents–Appellees.**

No. 00–2243.

United States Court of Appeals, Sixth Circuit.

March 21, 2002.

Before RYAN and GILMAN, Circuit Judges; and POLSTER, District Judge.*

### OPINION

POLSTER, District Judge.

Plaintiff–Appellant Robert Winburn, a Michigan state prisoner, brought a civil rights action against prison officials alleging that they violated his constitutional rights when they destroyed, ten days before the alleged filing deadline, a federal habeas petition that he had prepared. The district court granted summary judgment in defendants' favor, dismissing the entire

---

* The Honorable Dan Aaron Polster, United States District Judge for the Northern District    of Ohio, sitting by designation.

case. Winburn appeals only that part of the district court's decision dismissing his First Amendment access-to-courts claim.

## I. Background

On January 9, 1992, a jury convicted Robert Winburn of the first degree felony murder of James Barganier, assault with the intent to commit murder of John Green, and possession of a firearm in the commission of a felony. The trial court sentenced Winburn to concurrent sentences of life in prison for the murder conviction and 15–30 years for the assault conviction, along with 2 consecutive years for the firearm conviction. The Michigan Court of Appeals affirmed his conviction.

On September 13, 1995, the Michigan Supreme Court vacated the first-degree felony murder conviction,[1] but denied leave to appeal the remaining issues. The Court issued a remand order giving the prosecutor the option of trying the case again or permitting the trial court to enter a conviction of second-degree murder followed by re-sentencing. On remand, the prosecutor opted for entry of a second-degree murder conviction, and Winburn was re-sentenced to 25–50 years.

Winburn appealed the new sentence. On July 8, 1997, the Michigan appeals court affirmed the sentence and, on May 29, 1998, the Michigan Supreme Court denied leave to appeal.

Meanwhile, in 1997, Winburn filed a state postconviction petition asserting twenty-one issues, which the trial court denied. Winburn appealed this decision and simultaneously moved for permission to exceed the 50-page limit for appellate briefs. After the appeals court denied leave to exceed the page limitation (March

30, 1998) and the Michigan Supreme Court affirmed (June 29, 1998), Winburn filed a shortened application for leave to appeal the trial court's denial of his postconviction petition, this time raising only six issues.

Also during 1997, Winburn prepared the federal habeas petition that is at issue in this case. In April of that year, due to the volume of legal materials that he had accumulated, Winburn requested an administrative hearing to determine whether he was entitled to a second footlocker for storing the excess materials that would not fit into his first footlocker. His request for a hearing was granted. Winburn asserts that, on the morning of April 14, 1997, he was instructed to bring his legal materials to an Administrative Hearing Room so that a Legal Property Hearing could be conducted. He was told to leave the materials in the hearing room and return to his cell. That afternoon, the footlocker was returned to his cell at which time he was advised that his footlocker had been re-packed, and there was no need for a second footlocker or a hearing. Minutes later, Winburn discovered that his federal habeas petition was missing. He grieved this issue to the prison administration, to no avail.

On March 16, 1998, Winburn filed the instant lawsuit based on the destruction of his federal habeas petition in April 1997.

On August 5, 1998, the Michigan appeals court denied Winburn's application for leave to appeal and, on March 30, 1999, the Michigan Supreme Court denied leave to appeal that ruling.

On June 7, 1999, Winburn filed a federal habeas petition raising twelve issues. On September 10, 1999, he filed an amended federal habeas petition raising four addi-

---

**1.** The first degree murder conviction was vacated based on a jury instruction suggesting that the requisite intent to commit the under-

lying offense may be formed after commission of the crime.

tional issues. In January 2000, the district court issued an opinion denying Winburn's habeas petition after reviewing all claims raised in the original and amended petitions. *See Winburn v. Curtis,* No. 99–CV–72667–DT, 2000 WL 33244272 (E.D.Mich. Jan.31, 2000). The district court found that Winburn had exhausted his state remedies, but concluded that his claims were either procedurally defaulted or lacking in merit. With respect to the procedurally defaulted claims, the district court determined that certain issues first raised during the state postconviction proceeding should have been raised on direct review, and that Winburn had failed to show cause or prejudice to excuse the default, or a miscarriage of justice. Notwithstanding this ruling, the district court proceeded to review the procedurally defaulted claims and concluded that they had no merit. The remaining claims were reviewed on the merits and dismissed. The timeliness of the habeas petition was never raised or discussed, and Winburn did not cite the destruction of his 1997 habeas petition as cause for any of the procedural defaults.

## II. Analysis

■ We review *de novo* the district court's order granting summary judgment. *Richardson v. Township of Brady,* 218 F.3d 508, 512 (6th Cir.2000) (citing *Mayhew v. Allsup,* 166 F.3d 821, 822 (6th Cir. 1999)). The Court must analyze the evidence and draw all reasonable inferences therefrom in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ruffin–Steinback v. dePasse,* 267 F.3d 457, 461 (6th Cir.2001) (citing *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231 (6th Cir.1994)). Summary judgment is mandated "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Richardson,* 218 F.3d at 512.

Prisoners have a fundamental right of access to the courts under the First Amendment. *Lewis v. Casey,* 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996). Habeas corpus actions are among the proceedings to which this limited right attaches. *Bounds,* 430 U.S. at 828. The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. *Lewis,* 518 U.S. at 349; *see also Hadix v. Johnson,* 182 F.3d 400, 405 (6th Cir.1999). To survive summary judgment, the inmate must establish actual injury to a non-frivolous claim. *Hadix,* 182 F.3d at 405–406 (citing *Lewis,* 518 U.S. at 350–51). An "actual injury" does not occur "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers,* 238 F.3d 423, table (6th Cir.2000) (citing *Lewis,* 518 U.S. at 354–56; *Pilgrim,* 92 F.3d at 416). In other words, an inmate who claims that his access to courts was denied fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir.1996) (citing *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir.1993); *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985)).

■ This case presents the question of whether a prison official's intentional destruction of legal materials that delays, but does not preclude, a prisoner's access to

courts creates an injury sufficient to grant standing. The undisputed facts and the case law establish conclusively that it does not. Delay in filing legal documents alone does not rise to the level of a constitutional deficiency. *Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989); *Hudson v. Robinson,* 678 F.2d 462, 466 (3d Cir.1982). Delay must be coupled with a showing of litigation-related detriment. *Treff v. Galetka,* 74 F.3d 191, 194 (10th Cir.1996) (requiring prisoner to "show that any denial or delay of access to the court prejudiced him in pursuing litigation"); *Sands,* 886 F.2d at 1171. Winburn has not articulated a single issue set forth in his 1997 petition that was ever lost or rejected due to the delayed filing. Nor does he claim that the presentation of any issue is currently being prevented. Rather, he argues that he had the "right to proceed" with a habeas petition in 1997 that contained some (unarticulated) exhausted and unexhausted claims—issues that the district court *may* have chosen to entertain at the time. This argument plainly misses the mark.

The only thing the right to habeas review ensures state prisoners is a collateral examination of their state convictions for consistency with federal law. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of the custody...." *Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Winburn's effort to seek habeas review, which he alleges was impeded by defendants' actions in 1997, has now been realized. Winburn has had a full opportunity to challenge the legality of his custody in federal court. He cannot show that his habeas litigation suffered prejudice because a district court has reviewed all claims presented in the original and amended habeas petitions that he filed in 1999.[2]

It is noteworthy that Winburn never attempted to prepare and file another habeas petition until two years after the first petition was allegedly destroyed. Given that Winburn filed numerous motions in the state courts and a civil rights action in federal court in the meantime, it appears that Winburn expects to recover damages due to the confiscation of his petition alone. While the intentional destruction of a habeas petition by prison officials is morally reprehensible and may well be legally redressable under state law, the cases make it clear that the destruction of legal papers alone does not establish a constitutional access-to-courts claim. *Root,* 238 F.3d 423; *Kensu,* 87 F.3d 172. Again, Winburn must show prejudice to his habeas litigation, something he is unable to do.

### III. Conclusion

In sum, Winburn has not identified a single meritorious claim that was lost or rejected or that he was prevented from filing, due to the destruction of his habeas petition on April 14, 1997 or the delay in filing his petition. Accordingly, the district court's dismissal of Winburn's First Amendment claim is **AFFIRMED.**

---

**2.** Winburn's contention that defendants destroyed his habeas petition ten days before the filing deadline is meaningless because, at the time, he had two proceedings pending before state courts (one a direct review of his sentence); furthermore, the statute of limitations did not bar review of his habeas petition in 1999.