*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0332P (6th Cir.)
File Name: 03a0332p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BLAINE SALLIER,
    *Plaintiff-Appellee,*

    *v.*                          No. 01-1269

DEBORAH BROOKS and
CHRISTINE RAMSEY,
    *Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-70458—Arthur J. Tarnow, District Judge.

Argued: September 17, 2002

Decided and Filed: September 18, 2003

Before: SILER, DAUGHTREY, and GILMAN, Circuit
Judges.

_____

## COUNSEL

**ARGUED:** Kevin R. Himebaugh, OFFICE OF THE
ATTORNEY GENERAL, CORRECTIONS DIVISION,
Lansing, Michigan, for Appellants. Daniel E. Manville,
Ferndale, Michigan, for Appellee. **ON BRIEF:** Patrick J.

Wright, OFFICE OF THE ATTORNEY GENERAL,
CORRECTIONS DIVISION, Lansing, Michigan, for
Appellants. Daniel E. Manville, Ferndale, Michigan, for
Appellee.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. The
plaintiff, Blaine Sallier, filed this action as a Michigan state
prisoner, pursuant to 42 U.S.C. § 1983, charging that the
defendants, two prison mailroom clerks, had violated his civil
rights by unlawfully "opening, censoring, and interfer[ing
with his] legal mail" and seeking declaratory, monetary, and
injunctive relief. The district court declined to rule on the
defendants' claim of qualified immunity before trial and
instead instructed the jury to determine whether certain
correspondence was in fact legal mail and whether that
correspondence had been improperly opened outside of
Sallier's presence. The jury returned a verdict in the
plaintiff's favor on 13 of the claims, assessing damages at
$13,000.

The defendants now appeal the district court's ruling on
qualified immunity, as well as the district court's failure to
grant a new trial based on a number of evidentiary decisions
and what they contend were erroneous jury instructions. We
conclude that the question of what constitutes "legal mail" is
a question of law and, therefore, that the district court erred in
submitting the issue to the jury. For the reasons set out
below, we further conclude that the correspondence in 11 of
the 20 claims did not implicate constitutionally-protected
legal mail rights, that the defendants were entitled to qualified
immunity on six of the remaining nine claims, and that the
defendants were not entitled to qualified immunity on the
final three claims. We reverse the judgment below as to the
claims that either did not involve legal mail rights or for

which there was qualified immunity, and we affirm the judgment below as to the three claims involving protected legal mail rights for which there was no qualified immunity. We also reduce the damages awarded by the jury accordingly. Finally, we find no merit in the defendants' remaining evidentiary claims and affirm the district court's rulings on those issues.

## FACTUAL AND PROCEDURAL BACKGROUND

In this *pro se* § 1983 action, the plaintiff claims that two prison mailroom clerks, Deborah Brooks and Christine Ramsey, violated his federal constitutional rights by opening his "legal mail" outside his presence, after he had filed a written request to have such mail opened only in his presence. The written request was dated May 4, 1994, and was entered into the mailroom records on May 5, 1994. The 20 items of mail at issue were sent from various sources over a two-year period as follows:

A.  State Court Administrator – March 30, 1994

B.  Court of Appeals – April 1, 1994

C.  Judicial Tenure Commission – April 15, 1994

D.  Attorney Grievance Commission – April 29, 1994

E.  Michigan Appellate Assigned Counsel System – May 5, 1994

F.  American Bar Association – May 10, 1995

G.  Macomb County Clerk – May 19, 1995

H.  Macomb County Clerk – June 27, 1995

I.  State Appellate Defender Office – July 26, 1995

J.  Macomb County Clerk – August 16, 1995

K.  State Appellate Defender Office – August 29, 1995

L.  Teola P. Hunter, Wayne County Clerk – September 9, 1995

M.  Law Office of Kitch, Drutchas, Wagner & Keeney – November 7, 1995

N.  Lynn Allen, Oakland County Clerk – December 20, 1995

O.  United States District Court – December 22, 1995

P.  Michigan Court of Appeals – December 22, 1995

Q.  United States District Court – December 23, 1995

R.  United States District Court – December 27, 1995

S.  Sixth Judicial Circuit – January 22, 1996

T.  United States District Court – February 5, 1996

Sallier did not allege that any of the mail was actually read by prison employees, only that it was delivered to him already opened.

The defendants filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. They argued that Sallier had failed to establish a constitutional violation and that, even if he had, they were protected from suit by qualified immunity. The district court denied the defendants' motion and appointed counsel for Sallier. After Sallier's appointed counsel amended the complaint, the defendants again moved for dismissal pursuant to Rule 12(b)(6) based on qualified immunity. The court denied the motion, finding that

the jury must make . . . factual determinations before the Court has sufficient information to decide the qualified

immunity issue. The jury must, for example, decide whether each of the pieces of correspondence referenced in the Complaint constituted "legal mail," and whether any letters determined to be "legal mail" were opened outside of Mr. Sallier's presence. The jury's findings of fact are thus key to the Court's determination of qualified immunity, as the court must then decide, as a matter of law, whether the defendants would have reasonably understood that opening the specific pieces of mail referenced in the complaint violated Mr. Sallier's rights.

The jury must make credibility determinations and must determine what legal mail, if any, was opened outside of Mr. Sallier's presence after the defendants knew, or should have known, that such actions were prohibited.

Before and during the trial, the district court also issued a series of *in limine* rulings, including one that granted the plaintiff's motion to preclude admission of his prior convictions and another that denied the defendants' motion to require introduction into evidence of the original envelopes in which the letters in question were received. The court allowed Sallier to introduce as exhibits photocopies of some of the allegedly opened envelopes that included his handwritten notes.

The jury returned a verdict in the plaintiff's favor on 13 of the 20 claims, awarding compensatory damages of $750 and punitive damages of $250 for each claim, totaling $13,000 in damages. After the jury verdict, the defendants moved for a new trial based on alleged evidentiary errors or, in the alternative, for remittitur or judgment as a matter of law. The district court denied the motion. The defendants appeal the district court's denial of their motion for a new trial or remittitur and its failure to grant them qualified immunity on all claims.

### *ANALYSIS*

#### I.  "Legal Mail": a Question of Law

As a threshhold matter, we note that the district court erred in reserving a ruling on the defendants' qualified immunity defense until the jury made a factual determination as to whether each piece of correspondence constituted protected mail. The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's "legal mail" is a question of law properly decided by the court, not one of fact that can be submitted to a jury. *See Seal v. Morgan*, 229 F.3d 567, 580 (6th Cir. 2000)(stating that courts determine questions of law, juries determine questions of fact). Had the court found certain correspondence to be constitutionally protected legal mail, it should then have granted qualified immunity on any claims involving those items of correspondence that the defendants could have opened without violating constitutional rights that were clearly established at the time and of which a reasonable person would have known. *See Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995). After dismissing the claims for all correspondence that was either not legal mail or for which the defendants had qualified immunity, the court should have submitted the remaining claims to the jury for a verdict on the factual dispute of whether such correspondence was actually opened outside of Sallier's presence.

#### II. Constitutionally-Protected "Legal Mail"

A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). As we have noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir.

1993). However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

Moreover, when the incoming mail is "legal mail," we have heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts. . . ."); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail. . . .").

In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts). In *Knop*, we addressed an opt-in system in which prison officials could open any mail sent to a prisoner unless the prisoner affirmatively requested that "privileged mail," defined by the policy as mail sent by a court or by counsel, be opened in his presence. 977 F.2d at 1012. We found that the opt-in system was constitutionally sound as long as prisoners received written notice of the policy, did not have to renew the request upon transfer to

another facility, and were not required to designate particular attorneys as their counsel. *Id.*

Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney. When it does, however, we must balance the interest of prison security against the possibility of tampering that could unjustifiably chill the prisoner's right of access to the courts or impair the right to be represented by counsel. We also note in response to prison officials' security concerns that even constitutionally protected mail can be opened (although not read) and inspected for contraband. The only requirement is that such activity must take place in the presence of the recipient, if such a request has been made by the prisoner.

## A. Claims A, B, C, D, and E: Items Allegedly Opened Before Plaintiff Filed the Written Request

On May 4, 1994, Sallier submitted a form to the mailroom supervisor indicating that it was "a written request to be present when my legal mail is opened." The request was received by defendant Redmond on May 5, 1994. This written request was submitted in compliance with Michigan Administrative Code Rule 791.6605(4) and Michigan Department of Corrections policy directive PD 05.03.118 ¶K, both of which state that upon a prisoner's written request, mail that is clearly identified as being from the prisoner's designated attorney, the legislative corrections ombudsman, or a state or federal court "shall be opened and inspected for contraband in the prisoner's presence."

Sallier received all of the letters that he alleged were opened outside his presence in Claims A, B, C, D, and E on or before the date that his written request was accepted in the prison mailroom. Because this court and others have upheld

opt-in systems that require an affirmative request to be present when legal mail is opened, Sallier had no constitutionally protected right to be present for the opening of any mail before the mailroom had received his request. Therefore, we need not reach the issue of whether the mail in Claims A, B, C, D, and E constituted "legal mail." As a matter of law, the defendants cannot be liable for having opened mail, even if it is "legal mail," prior to the time that Sallier made his written request to have such mail opened in his presence. As a result, Claims A, B, C, D, and E should not have been submitted to the jury and, accordingly, the jury verdict on these five claims must be set aside.

### B.  Claim F:  Correspondence from the American Bar Association

Sallier alleged that on May 10, 1995, he received correspondence from the American Bar Association that was opened by the defendants outside his presence. Nothing on the envelope indicated that it contained confidential, personal, or privileged material, that it was sent from a specific attorney at the ABA, or that it related to a currently pending legal matter in which Sallier was involved. The ABA is a professional organization designed to support attorneys in a variety of ways; it is not an organization that has the authority to take action on behalf of an inmate. *Compare Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (finding that a letter from the National Prison Project, bearing the name of an attorney and stamped "Lawyer Client Mail Do Not Open Except In Presence of Prisoner" appears to come well within the definition of protected attorney-client legal mail). Given that the ABA is not a direct-services legal organization and generally does not provide legal advice and that the envelope contained no marking to alert a prison employee that it was to be opened only in the presence of the prisoner, receipt of this correspondence did not implicate constitutionally protected legal mail rights. *Cf. Boswell v. Mayer*, 169 F.3d 384, 388-89 (6th Cir. 1999) (upholding prison policy of treating mail from a state attorney general's office as protected legal mail only

if (a) the envelope contains the return address of a licensed attorney and (b) the envelope has markings that warn of its privileged content); *Wolff*, 418 U.S. at 576 (finding it entirely appropriate for a state to require any communication from an attorney to be specially marked as originating from an attorney, including the attorney's name and address, if the communication is to be given special treatment).

In general, when there is no specific indication to the contrary, an envelope from an organization such as the ABA may be opened pursuant to the regular mail policy without violating the First Amendment rights of a prisoner. As a matter of law, therefore, the defendants cannot be liable under Claim F, which should not have been submitted to the jury. Accordingly, the jury verdict on this claim must be set aside.

### C.  Claims G, H, J, L, and N:  Correspondence From County Clerks

Sallier alleged that on May 19, 1995, June 27, 1995, August 15, 1995, September 6, 1995, and December 20, 1995, he received mail from various county clerks that was opened outside of his presence. The senders on these envelopes are: (1) Carmella Sabaugh, Macomb County Clerk and Register of Deeds; (2) Teola P. Hunter, Wayne County Clerk; and (3) Lynn D. Allen, Oakland County Clerk - Register of Deeds, County Clerk's Office. Nothing on any of the envelopes indicated that the envelope contained confidential, personal, or privileged material, that it was sent from an attorney, that it related to a currently pending legal matter in which Sallier was involved, or that it was to be opened only in the presence of the prisoner. In general, a county clerk or register of deeds is not someone who can provide legal advice about a prisoner's rights or direct legal services and is not someone with authority to take action on behalf of a prisoner. Mail from a county clerk simply does not implicate a prisoner's right of access to the courts, of petitioning the government to redress grievances, or of competent representation by counsel. The administrative

matters about which one generally communicates with a county clerk or register of deeds, *i.e.*, birth, marriage, or death certificates, tax and real estate services, automobile title and registration, etc., are not the types of legal matters that raise heightened concern or constitutional protection.

We find that as a general matter and as applied to Claims G, H, J, L, and N in this case, mail from a county clerk or register of deeds does not implicate constitutionally protected legal mail rights. Given the nature of a county clerk's office and given that there was no specific indication to the contrary marked on the envelope, the correspondence from the county clerks and registers of deeds in this case could be opened pursuant to the regular mail policy without violating Sallier's First Amendment rights.

As a matter of law, therefore, the defendants cannot be liable under Claims G, H, J, L, and N. These claims should not have been submitted to the jury and, accordingly, the jury verdict on these claims must be set aside.

### D. Claims O through T:  Correspondence from State and Federal Courts

In these claims, Sallier alleged that on various dates between December 22, 1995, and February 5, 1996, he received mail from state and federal courts that was opened outside of his presence. The status of such mail presents the most difficult question in this appeal, because it will frequently, but not necessarily, involve a currently pending legal matter affecting the prisoner's rights. *See Bell-Bey v. Williams*, 87 F.3d 832, 837-38 (6th Cir. 1996); *see also Taylor v. Sterrett*, 532 F.2d 462, 475 (5th Cir. 1976) (holding that an inmate's right of access to the courts requires that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate).

We recognize that the Seventh Circuit has stated in dicta that mail from court personnel can be treated as general correspondence unless it is designated according to prison policy as "Special Mail - Open only in the presence of the inmate," because mail from court personnel is generally a matter of public record. *See Martin v. Brewer*, 830 F.2d 76, 78-79 (7th Cir. 1987); *Castillo v. Cook County Mail Room Dept.*, 990 F.2d 304, 306-07 (7th Cir. 1993) (calling the *Martin* decision non-binding as dicta on this point, and reversing a district court's dismissal of a prisoner complaint alleging two letters from a federal district court and one from the United States Department of Justice were opened outside his presence); *but see Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996)(citing *Martin* for the proposition that "mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail"). However, prior decisions from our court have used the term "legal mail" to include mail from the courts and have expressed disagreement with *Martin*'s rationale that mail from a court is automatically a matter of public record. *See Bell-Bey*, 87 F.3d 832 (referring throughout the opinion to mail from a prisoner to his designated attorney as well as to any state or federal court as legal mail); *Boswell*, 169 F.3d at 389-90 ("Unlike mail from the ACLU, courts, defense attorneys, and so forth, mail from Prosecuting Attorneys and the Attorney General will almost always consist of documents in the public record.").

Indeed, we can imagine a situation in which a court corresponds with a prisoner before filing the prisoner's complaint because some administrative requirement, such as submitting an *in forma pauperis* affidavit, paying the filing fee, or signing the complaint, has not been met. In that situation, the complaint is not yet a public record, and prison officials have no legitimate penological interest in reading the correspondence before it is. *See Turner v. Safely*, 482 U.S. 78 (1987) (prison officials must articulate some legitimate reason for interfering with prisoners' communications). In order to guard against the possibility of a chilling effect on a prisoner's exercise of his or her First Amendment rights and

to protect the right of access to the courts, we hold that mail from a court constitutes "legal mail" and cannot be opened outside the presence of a prisoner who has specifically requested otherwise.

### E. Claims I, K, and M: Correspondence from Attorneys

As to these three claims, Sallier alleged that on July 26, 1995, August 29, 1995, and November 7, 1995, he received mail from an attorney that was opened outside of his presence. Such correspondence is, of course, the very essence of "legal mail." *See Kensu,* 87 F.3d at 174; *Knop,* 977 F.2d at 1012. Moreover, in *Knop,* we held that a prisoner may not be required to designate ahead of time the name of the attorney who will be sending the prisoner confidential legal mail. *Id.* In fact, we even implied in *Muhammad v. Pitcher,* 35 F.3d 1081 (1994), that a prison policy allowing inmates to be present when mail from their attorneys was opened was constitutionally required, and we held that mail from the Attorney General's office required similar protection because of the potentially confidential nature of such correspondence. *Id.* at 1083.

We are not alone in this conclusion. Although courts in other circuits have embraced varying definitions of "legal mail," there is general agreement that mail from a prisoner's attorney is always included in such a definition. *See, e.g., Keenan,* 83 F.3d at 1094 (stating mail from a prisoner's lawyer is legal mail); *Lemon v. Dugger,* 931 F.2d 1465, 1466 (11th Cir. 1991) (same); *Jensen,* 648 F.2d at 1182 (same). When the Supreme Court considered the question of incoming legal mail in *Wolff,* 418 U.S. at 576-77, it concluded that a prison policy requiring an inmate to be present when mail from his attorney is opened adequately protects the inmate's constitutional rights.

We find that the prisoner's interest in unimpaired, confidential communication with an attorney is an integral

component of the judicial process and, therefore, that as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights. *See Kensu,* 87 F.3d at 174 (referring to a prisoner's right to protect the contents of correspondence with an attorney as a "fundamental right"). There is no penological interest or security concern that justifies opening such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise.

### III. Qualified Immunity

Given our conclusion that Claims I, K, N, and O through T involve "legal mail," we now turn to the defendants' qualified immunity defense. Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a purely legal question to be determined prior to trial, *see Donta v. Hooper,* 774 F.2d 716, 719 (6th Cir. 1985), and a plaintiff bears the burden of proving that a clearly established right existed at the time a defendant's actions took place. *See Tucker v. Callahan,* 867 F.2d 909, 913 n.3 (6th Cir. 1989). In determining whether a constitutional right is clearly established at the time of the actions in question, we "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Buckner v. Kilgore,* 36 F.3d 536, 539 (6th Cir. 1994). A court need not have held that the very action in question is unlawful if, in light of pre-existing law, the unlawfulness is apparent. *See Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996).

As we have recently observed:

Qualified immunity involves a three-step inquiry. First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the

plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (en banc). As noted above, the first step of the inquiry is met for Sallier's claims involving mail from the courts and counsel: the facts viewed in the light most favorable to him show that a constitutional violation occurred. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry.")

The second step of the inquiry is whether the violation, when it occurred, involved a clearly established constitutional right. All of Sallier's claims in this case occurred on or before February 5, 1996. At that point in time, this court had struggled with the issue of legal mail in our published opinions in *Knop*, *Lavado*, and *Muhammad.* In *Knop*, a 1992 decision, we noted that a prisoner's right to receive mail is protected by the First Amendment and that the attorney-client relationship is shielded from unwarranted intrusion in criminal settings by the Sixth Amendment. 977 F.2d at 1012. In 1993 in *Lavado*, when faced with a qualified immunity issue, we held that it was clearly established as of 1987 that a prisoner's mail could not be opened and read in an arbitrary and capricious fashion. 992 F.2d at 610. Both parties and the court in *Lavado* referred to correspondence from the Eleventh

Circuit Court of Appeals as legal mail, although the status of the mail in question was not at issue in the case. *See id.* at 609. In *Muhammad*, a 1994 opinion, we observed that other courts "have consistently recognized that 'legal mail' includes correspondence from elected officials and government agencies, including the offices of prosecuting officials such as state attorneys general." 35 F.3d at 1083. We emphasized in that case that a prisoner has a fundamental interest in maintaining the confidentiality of correspondence with the attorney general, just as with other legal assistance organizations. *Id.* Again, however, the status of mail received from a court was not directly in issue.

On the other hand, a panel of this court held in an unpublished 1993 opinion that a prisoner failed to state a constitutional claim when she alleged that mail received from the courts had been opened outside of her presence. *See Meckley v. FCI Lexington Mailroom Staff*, 1993 WL 187945 at *2 (6th Cir. 1993). In that case, a prisoner challenged the constitutionality of applying to court mail the presumption that all incoming mail can be opened unless it is marked with "Special Mail - Open only in the presence of the inmate." Adopting the reasoning of the Seventh Circuit in *Martin*, 830 F.2d at 78-79, the panel in *Meckley* based its holding on the assumption that court mail generally contains matters of public record. *Meckley*, 1993 WL 187945 at *2.

Given this lack of clarity with regard to the status of prisoner mail received from courts at the time that the plaintiff's mail was opened in this case, we conclude that the defendants are entitled to qualified immunity from liability on claims involving mail from the courts. Although there is language in *Lavado* and *Mohammad* suggesting that mail from a court is legal mail, the holding in *Meckley*, even though the opinion was unpublished, was directly to the contrary. Furthermore, at the time Sallier's mail was opened, the Seventh Circuit had stated in widely-quoted dicta that mail from courts was not "legal mail." *See Martin*, 830 F.2d at 78-79. Nothing from the Supreme Court, or in our circuit

precedent, or from our sister circuits at the time clearly established that mail from a court was protected as legal mail.

Attorney mail is, of course, an altogether different story. We had clearly indicated in *Muhammed* that attorney mail was "legal mail" and that a prisoner is entitled to be present when his attorney mail is opened. Indeed, the defendants concede, although arguing that the law with regard to "legal mail" is generally unclear, that "the most that can be said is that attorney mail was clearly established as legal mail."

This analysis brings us to the third step of the qualified immunity: whether Sallier has offered sufficient evidence to indicate that the defendants' actions were objectively unreasonable in light of the clearly established constitutional rights. In all three claims involving mail from counsel, the defendants listed the letters on the legal mail log as legal mail. They simply failed to follow established procedures requiring Sallier's presence before the letters were opened. Such a failure, after recognition of the letters as protected legal mail, is objectively unreasonable, and we conclude that the defendants are not entitled to qualified immunity on these three claims.

In sum, the defendants are entitled to qualified immunity for Claims O through T because it was not clearly established at the time that mail from the courts was protected legal mail, and the district court erred in holding to the contrary. Accordingly, Claims O through T should not have been submitted to the jury, and the jury verdict on those claims must be vacated. However, the defendants are not entitled to qualified immunity for Claims I, K, and M; those claims were properly submitted to the jury for a determination on the factual question of whether the letters in question were opened by the defendants outside of Sallier's presence. The jury's verdict on Claims I, K, and M is therefore affirmed.

## IV. Failure to Grant Remittitur or a New Trial

We review a remittitur ruling for abuse of discretion. *See Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 443 (6th Cir. 2000). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Id.* We find that the jury award in this case, $750 in compensatory damages and $250 in punitive damages for each of the three claims properly submitted, is not clearly excessive, does not show the jury acted from passion, bias, or prejudice, and does not shock our judicial conscience.

We likewise review the denial of a motion for a new trial for abuse of discretion. *See Barnes v. Owens-Corning*, 201 F.3d 815, 820 (6th Cir. 2000). When the new trial motion is based upon a challenge to jury instructions, we must evaluate the jury instructions to determine whether, taken as a whole, they were misleading or provided an inadequate understanding of the law. *See Bowman v. Koch Transfer Co.*, 862 F.2d 1257, 1263 (6th Cir. 1988). The defendants first argue that the legal mail instruction was in error. We agree and, as stated above, find that the court should have determined which letters were legal mail and submitted only those claims to the jury. As for the rest of the defendants' complaints concerning the jury instructions – namely, those related to specific intent, prior convictions, and government witnesses, as well as the contention that the district court should have used a special verdict form with separate sections for the two defendants – we find no error. When taken as a whole, the jury instructions, with the exception of the legal mail instruction, were not misleading and did not provide an inadequate understanding of the law.

The defendants also argued for a new trial based on evidentiary rulings involving hearsay and the best evidence

rule.  After a careful review of the record, we cannot say that the district court abused its discretion in denying the motion for a new trial that challenged these rulings.

## *CONCLUSION*

For the reasons set out above, the jury verdict on Claims A through H, J, L, and N through T is set aside, and the judgment in the plaintiff's favor on those claims is REVERSED; the jury verdict on Claims I, K, and M is sustained, and the judgment in the plaintiff's favor on those claims, for a total of $3,000, is AFFIRMED; and the award of attorneys fees, which, pursuant to 42 U.S.C. § 1997e(d)(2), cannot exceed 150 percent of the judgment, is hereby reduced to $4,500.