RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

AMERICAN CIVIL LIBERTIES UNION FUND OF
MICHIGAN,

                *Plaintiff-Appellee*,

    *v.*

LIVINGSTON COUNTY; BOB BEZOTTE, in his official
capacity as Livingston County's Sheriff; TOM
CREMONTE, in his individual capacity and in his
official capacity as Livingston County's Jail
Administrator,

                *Defendants-Appellants.*

No. 14-1617

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-11213—Denise Page Hood, District Judge.

Argued: April 21, 2015

Decided and Filed: August 11, 2015

Before: SILER, MOORE, and STRANCH, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** T. Joseph Seward, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellants. Daniel S. Korobkin, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, for Appellee. **ON BRIEF:** T. Joseph Seward, Lindsey A. Kaczmarek, CUMMINGS, MCCLOREY, DAVIS & ACHO, Livonia, Michigan, for Appellants. Daniel S. Korobkin, Michael J. Steinberg, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, Tara E. Mahoney, John J. Rolecki, HONIGMAN MILLER SCHWARTZ AND COHN LLP, Detroit, Michigan, for Appellee.

1

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.   Plaintiff American Civil Liberties Union Fund of Michigan sent letters enclosed in sealed envelopes to twenty-five inmates at the Livingston County Jail that were marked "Legal Mail," included the name and bar number of a Michigan attorney, and offered legal assistance regarding the Jail's mail policy.   The Jail's written mail policy requires that all mail except "bona-fide legal mail" must be on 4x6 inch postcards; "legal mail," on the other hand, may be sent in a sealed envelope and is generally not opened outside the inmate's presence.   The Jail did not deliver the ACLU's letters to the inmates, nor did the Jail inform the ACLU or the inmates that the mail was not delivered.   In response, the ACLU filed this action arguing that the Jail's policies violated the First and Fourteenth Amendments of the U.S. Constitution by failing to deliver the letters and by failing to notify the ACLU or the inmates about the non-delivery.   The ACLU then moved for a preliminary injunction, which the district court granted and, in doing so, ordered the Defendants to deliver the letters.   On appeal of that interlocutory order, the Jail argues that the injunction was improper because the Jail believes that legal mail does not include mail from an attorney if the mail neither contains privileged content nor implicates an attorney-client relationship.   We disagree, and for the following reasons, **AFFIRM** the district court's preliminary injunction.

## I.  FACTS AND PROCEDURE

### A.  Factual Background

The Livingston County Jail has adopted a "postcard policy" for mail coming in and out of the Jail.   The Jail's mail policy requires that "[a]ll mail, except bona-fide legal mail, will be by standard plain 4x6 postcards no images."   R. 29-3 (Inmate Rules and Regulations at 3) (Page ID #597); *see also* R. 1-3 (Comp. Ex. A, Jail Website at 2) (Page ID #19).   This is true "for both incoming and out-going mail."   R. 29-3 (Inmate Rules and Regulations at 3) (Page ID #597). The Jail's policy further states that "[m]ail from attorneys, courts, and public officials may be opened in front of the inmate," establishing that mail from these sources is not subject to the 4x6 inch postcard policy.   *Id*.; *see also* R. 1-3 (Comp. Ex. A, Jail Website at 2) (Page ID #19)

("Correspondence from Attorneys, as well as court and public officials may be opened in the presence of an inmate."). The Jail's written policies do not otherwise define "bona-fide legal mail" or "mail from attorneys." R. 1-9 (Cremonte Dep. at 100) (Page ID #89).

Defendant Tom Cremonte, the Livingston County Jail Administrator, is in charge of determining whether incoming mail qualifies as "legal mail" under the Jail's policies. *Id*. at 28–29 (Page ID #86). Cremonte testified in a related case, *Prison Legal News v. Bezotte et al*., No. 11-cv-13460 (E.D. Mich. 2011), about the Jail's postcard policy. In that case, Cremonte defined "bona-fide legal mail" under the Jail's policies as "[m]ail from an attorney to a client . . . [o]r mail that's on a legitimate legal matter that involves the [inmate]" and "mail from the court." R. 1-9 (Cremonte Dep. at 29, 103) (Page ID #86, 90). According to Cremonte, all other mail—including mail from an attorney who does not have a pre-established attorney-client relationship with an inmate—must be on white 4x6 inch postcards. In determining whether an attorney represents an inmate in a legal matter, Cremonte testified that, if he does not know the attorney, he or one of his sergeants will "investigate it" by asking the inmate about the sender or by calling the "circuit court" or a "Judicial Aide who keeps track of all the attorneys." *Id*. at 30–32 (Page ID #87). It is unclear from the record what "circuit court" Cremonte was referring to, although Cremonte testified that the Jail's "investigation" did not include calls to any Michigan Court of Appeals, the Michigan Supreme Court, or the federal court systems in Michigan. *Id*. at 32–33 (Page ID #87). Further, Cremonte interprets "mass mailings" as "a solicitation as opposed to a bona fide legal matter." *Id*. at 112 (Page ID #92). He also explained that "[i]f it is an attorney from out of the county, if it's an attorney where you get four, five pieces of mail, 'legal mail,' and there are four or five inmates getting them, those I would say are not legal mail" under the Jail's policies.[1] *Id*. at 30 (Page ID #87). Nothing in the Jail's written policies state that "legal mail" to an inmate must be from an attorney of record in pending litigation; instead, this is a practice established by Cremonte. *Id*. at 101–103 (Page ID #89–90). Nor do the Jail's written policies suggest that mail from an out-of-county attorney to "four or five" inmates cannot be "bona-fide legal mail."

---

[1]The ACLU interpreted this testimony as meaning the "Defendants do not deliver legal mail when an attorney from outside the county writes to four or five inmates." R. 1 (Comp. at 9) (Page ID #9). A broader reading of the testimony would be that the Jail does not deliver mail from an attorney from outside of the county *or* mail sent to four or five inmates. The parties have not had the opportunity to explore this area through discovery, so we apply the narrow reading here.

The Jail's postcard policy is the subject of the *Prison Legal News v. Bezotte et al.*, litigation. In that case, the plaintiff argues that the Jail's postcard policy unconstitutionally restricts correspondence to prisoners and provides inadequate due-process protections to senders of mail. *Prison Legal News v. Bezotte et al.*, No. 11-cv-13460, R. 1 (Comp. at 1–2) (Page ID #1–2). The district court in that case granted the ACLU leave to file an amicus curiae brief relating to the constitutionality of the Jail's postcard policy.

Because of the Jail's postcard policy, the ACLU also mailed twenty-five letters in envelopes to individually named inmates at the Jail. R. 1 (Comp. at 9) (Page ID #9). The envelopes were conspicuously marked "legal mail," and the outside of the envelopes included an attorney's name, the attorney's Michigan bar number, and the ACLU's logo and address. *Id*. The letters inside the envelope were again marked "legal mail," included ACLU letterhead, and were signed by the attorney whose name was on the envelope. *Id*. The letters expressed concern with the constitutionality of the Jail's postcard policy and offered to meet with inmates, upon request, to provide legal assistance regarding the issue. *Id*. Specifically, the letter stated:

> The American Civil Liberties Union of Michigan (ACLU) is investigating the Livingston County Jail's troubling "postcard only" policy for inmate mail, which we believe to be unconstitutional.
>
> In order to learn more about this policy and its effects on inmates and their families, we wish to meet with individuals who may be interested in challenging this policy in court. <u>The purpose of this letter is to find out if you are interested in meeting with an ACLU attorney</u>, or someone who works under the supervision of an ACLU attorney, for the purpose of obtaining <u>legal advice or assistance</u> regarding the Livingston County Jail's postcard-only mail policy. If you are, please fill out the enclosed form and return it to me in the enclosed envelope as soon as possible.
>
> Unfortunately, it is extremely unlikely that we will be able to help you with any other legal issues you may have. Furthermore, it may turn out that we are ultimately unable to represent you in this matter. By filling out the form below, you would be requesting a meeting with an ACLU attorney in order to seek legal advice or discuss the possibility of legal representation.

R. 1-8 (Comp. Ex. F, Feb. 19, 2014 Letter) (Page ID #81) (emphasis in original). The letters included a form for inmates to fill out and return to the ACLU if they wished a meeting with an ACLU attorney. R. 1 (Comp. at 9) (Page ID #9).

Although the Jail received the letters, the ACLU did not receive responses from the inmates or notification from the Jail that the letters were not delivered to the inmates. *Id*. at 10 (Page ID #10). After sending the letters, the ACLU learned of Cremonte's testimony in the *Prison Legal News* case noted above, in which Cremonte testified that the Jail does not deliver mail unless the mail was sent by an inmate's "attorney of record" in an ongoing case; the Jail does not deliver legal mail from an attorney from outside the county who writes to four or five inmates; and the Jail does not deliver legal mail if Jail officials determine that the letter is a "mass mailing." *Id*. Based on this testimony, the ACLU believes that the letters were not delivered. *Id*. at 11 (Page ID #11). The ACLU also learned that one of the letters was addressed to an inmate who no longer resides at the Jail, but the Jail did not return the mail to the ACLU; instead, the Jail opened the letter and read its contents, sent a copy to the Jail's attorneys, and published the letter on PACER in the *Prison Legal News* case. *Id*. at 12 (Page ID #12).

**B. Procedural Background**

Based on this, the ACLU filed a verified complaint initiating this case against Defendants Livingston County, Livingston County Sheriff Bob Bezotte (official capacity), and Livingston County Jail Administrator Tom Cremonte (official and individual capacities). The ACLU alleges that the Defendants violated the First Amendment by blocking delivery of the letters and by reading the letters and publishing them to the public; and the Fourteenth Amendment by blocking delivery of the letters without providing the sender or intended recipient of the letter notice that the letter would not be delivered and an opportunity to contest the nondelivery. *Id*. at 12–13 (Page ID #12–13). The complaint seeks declaratory and injunctive relief and monetary damages, among other things. *Id*. at 14–15 (Page ID #14–15).

Shortly after filing the complaint, the ACLU moved for a temporary restraining order ("TRO") and/or a preliminary injunction. R. 11 (Plf. Mot. for TRO/Prel. Inj.) (Page ID #114). In its motion, the ACLU sought an order: (1) requiring the Defendants immediately to deliver the ACLU's letters to the inmates to whom they are addressed or return any letter if the inmate is no longer in the Defendants' custody; (2) enjoining the policy of refusing to deliver properly marked legal mail sent by an attorney and individually addressed to an inmate; (3) enjoining the Defendants from failing to "provide individualized notice and an opportunity to be heard to the

intended recipient and to the sender of any mail" that is addressed to an inmate but is not delivered; and (4) enjoining the Defendants from "reading, sharing, or publishing the content of legal mail" without a warrant or probable cause that the mail threatens jail security. *Id*. at 2, 33 (Page ID #115, 146).

The district court granted the TRO and set a hearing date for the motion for a preliminary injunction. R. 12 (D. Ct. Ord. Granting TRO and Notice Setting Hr'g on Mot. for Prel. Inj.) (Page ID #148). In their brief objecting to a preliminary injunction, the Defendants asserted that "[i]ncoming mail from an attorney qualifies as privileged legal mail if the attorney represents the inmate in a legal matter in which the inmate is involved." R. 24 (Defs. Resp. to Prel. Inj. at 4) (Page ID #307). Thus, the Defendants argued, because the ACLU's letters did not contain privileged content pertaining to an ongoing legal matter involving the inmates at issue, the letters had to comport with the non-legal postcard policy. *Id*. at 12 (Page ID #315).

The district court rejected the Defendants' position, and granted the ACLU a preliminary injunction. The district court found that the ACLU's letters were "legal mail" because the envelopes were labeled as such, they clearly stated that they came from an attorney, and the letters asked whether the inmate was interested in meeting with an attorney "*for the purpose of obtaining legal advice or assistance*" regarding the Jail's postcard policy. R. 34 (D. Ct. Op. at 13) (Page ID #633) (emphasis in original). The district court entered an order enjoining the Defendants "from not delivering any legal mail from the ACLU to any inmate consistent with the above decision. If the inmate is no longer in custody, Defendants must return the mail forthwith to Plaintiff indicating same." *Id*. at 17 (Page ID #637). The district court denied the Defendants' motion to stay the injunction pending appeal. R. 41 (D. Ct. Ord.) (Page ID #709). This appeal followed. A motions panel of this court also denied the Defendants' motion to stay the injunction pending resolution of this appeal.

## II.  STANDARD OF REVIEW

A district court must balance four factors in determining whether to grant a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by

the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.,* 511 F.3d 535, 542 (6th Cir. 2007)). We normally review a district court's weighing of the four factors for abuse of discretion. *Id*. at 819. But in First Amendment cases, "'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.'" *Id*. (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)). This is because the public's interest and any potential harm to the parties or others "largely depend on the constitutionality of the [state action]." *Id*. (quoting *Hamilton's Bogarts*, 501 F.3d at 649); *see Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 950 (2015) ("[W]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012))).

As a result, "[w]hether the movant is likely to succeed on the merits is a question of law we review de novo." *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). We review the district court's ultimate determination as to the four preliminary injunction factors, however, for abuse of discretion. *Id*.; *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 454 (6th Cir. 2014) ("[W]hen we look at likelihood of success on the merits [in First Amendment cases], we independently apply the Constitution, but we still defer to the district court's overall balancing of the four preliminary-injunction factors."). In addition, "preliminary injunctions are extraordinary and drastic remedies . . . never awarded as of right." *Platt*, 769 F.3d at 453 (internal quotation marks and brackets omitted). Thus, "[t]he party seeking a preliminary injunction bears the burden of justifying such relief." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012).

## III.  ANALYSIS

### A.  Likelihood of Success on the Merits

#### 1.  First Amendment Claim

On appeal, the Defendants argue that the ACLU is unlikely to succeed on the merits of its First Amendment claim because the letters at issue do not qualify as "legal mail." The Defendants claim that "[t]he protections accorded legal mail do not extend to mail from an

attorney if it neither contains privileged content nor implicates the attorney-client relationship." Appellant Br. at 9.  According to the Defendants, "[i]ncoming mail from an attorney qualifies as legal mail if the attorney represents the inmate in a legal matter that involves the inmate." *Id*. at 3.  Thus, the Defendants argue, because the ACLU does not have an existing attorney-client relationship with any of the inmates addressed on the letters and the letters did not involve an ongoing legal matter, the Jail was not obligated to treat the letters as "legal mail" under its mail intake policy.

We reject the Defendants' overly restrictive interpretation of legal mail as contrary to our precedent and an unnecessary impingement on important First Amendment rights.  We have consistently held that "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576– 77 (1974)).  Although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "when the incoming mail is 'legal mail,' we have heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail," *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003).  A "prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, . . . as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights. *See Kensu*, 87 F.3d at 174 (referring to a prisoner's right to protect the contents of correspondence with an attorney as a 'fundamental right')." *Id*. at 877.  As a result, we have made clear that "a review of regulations governing 'legal mail' is subject to a heightened standard." *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009).

Contrary to the Defendants' position, this court has never suggested that "legal mail" requires an existing attorney-client relationship.  In *Sallier*, we explained that "when the incoming mail is 'legal mail,' . . . a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that *impacts upon or has import for* the prisoner's legal rights, the attorney-client privilege, *or* the right of access to the courts." 343 F.3d at 874 (emphasis added).  Applying this standard, we held that a letter from the America Bar Association ("ABA") is not "legal mail" because "the ABA is not a direct-services legal organization and generally does not provide legal advice." *Id*. at 875 (noting that

"[n]othing on the envelope indicated that it contained confidential, personal, *or* privileged material" (emphasis added)). Similarly, a letter from a county clerk is not legal mail because a clerk "is not someone who can provide legal advice about a prisoner's rights or direct legal services and is not someone with authority to take action on behalf of a prisoner." *Id*. at 876. Mail from an attorney, however, is legal mail as a matter of law because "unimpaired, confidential communication with an attorney is an integral component of the judicial process." *Id*. at 877. Nowhere did we suggest that the "legal mail" analysis turns on the existence of an attorney-client relationship.

Likewise, in *Kensu*, we determined that "[t]he right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts." 87 F.3d at 174. We then "define[d] 'legal mail' to include delivery of *legal materials* to a prisoner, properly and clearly marked as legal materials." *Id*. (emphasis added). Similarly, in *Jones*, we noted that the key issue is whether communication "implicate[s] the right to petition for grievances and the right of access to the courts." 569 F.3d at 268. In *Knop v. Johnson*, we affirmed a district court order that found that the prison's policy of requiring prisoners to designate a particular attorney to activate privileged treatment of legal mail was unconstitutional and that ordered a uniform policy where "*all incoming mail from attorneys* and from the courts is to be treated as privileged mail." 977 F.2d 996, 1012 (6th Cir. 1992) (emphasis added); *see also Boswell v. Mayer*, 169 F.3d 384, 389–90 (6th Cir. 1999) (contrasting "legal mail" from "the ACLU, courts, defense attorneys, and so forth" with "mail from Prosecuting Attorneys and the Attorney General" because the latter "will almost always consists of documents in the public record").

Our holding in *Muhammad v. Pitcher* most clearly calls the Defendants' interpretation of "legal mail" into doubt. 35 F.3d 1081 (6th Cir. 1994). One of the issues in that case was whether mail from the State Attorney General can ever be considered "legal mail." The defendants argued that such mail could never be legal mail because "the Attorney General's Office represents the prison and so is adverse to the inmates," but we disagreed. *Id*. at 1082–83. In doing so, we noted that "the Attorney General's Office frequently serves prisoners in the very same way that legal assistance organizations such as the State Appellate Defender's Office and Prison Legal Services do." *Id*. at 1083. We explained that an inmate may correspond with the

Attorney General regarding legal remedies, future prosecutions, or complaints about prison conditions, among other things, and the Attorney General's Office "*could* take action on behalf of an inmate, *or on behalf of the state* based upon information provided by an inmate." *Id*. (emphasis added). Indeed, "any response from the Attorney General to a confidential inquiry may well be sensitive and confidential itself." *Id*. What is important is that, as with "correspondence from any other legal assistance organization[,] . . . a prisoner has a fundamental interest in maintaining the confidentiality of such correspondence." *Id*. Thus, like the above language from *Sallier*, *Kensu*, *Jones*, and *Knop*, the court in *Muhammad* made clear that, in determining whether correspondence is legal mail, the issue does not turn on whether there is an existing attorney-client relationship regarding an on-going legal matter; rather, the key issue is whether the attorney and inmate have a fundamental interest in maintaining the confidentiality of communications relating to a legal matter.

These principles apply equally here. The ACLU's letters are precisely the type of communication that an attorney and an inmate would want kept confidential—the letters were addressed to a specific inmate, clearly marked "legal mail," and included the name and bar number of a licensed Michigan attorney. *Kensu*, 87 F.3d at 174 ("defin[ing] 'legal mail' to include delivery of legal materials to a prisoner, properly and clearly marked as legal materials."). Moreover, the substance of the letters indicated that the ACLU believed that the Jail's mail policy was unconstitutional, offered legal advice and assistance to the inmates, and noted the possibility of bringing a future legal action attacking the constitutionality of the Jail's mail policy. *See Sallier*, 343 F.3d at 874 ("legal mail" is correspondence that "impacts upon or has import for [a] prisoner's legal rights"). Attorneys from "legal assistance organization" like the ACLU (or any other attorney for that matter) must be able to send confidential communication *prior to* initiating a legal action or formally creating an attorney-client relationship. *See Muhammad*, 35 F.3d at 1083. Otherwise, attorneys will be unable to use the mail to communicate in confidence with inmates about the Jail's conditions of confinement or assess whether a constitutional violation at the Jail is occurring. Indeed, both attorneys and inmates have a strong interest in keeping communications relating to the initial investigative stages of a legal matter confidential such that the correspondence is not disclosed to Jail personnel or other inmates.

Under the Defendants' interpretation of legal mail, however, none of this pre-attorney-client-privilege communication can be kept confidential. Indeed, pursuant to the Jail's postcard-only policy, absent legal mail protection for pre-attorney-client-privilege communication Jail staff would be able to read any correspondence from an attorney pertaining to an initial-stage, pre-litigation investigation into the conditions of confinement at the Jail, even those that reference sensitive "confidential [or] personal" information. *Sallier*, 343 F.3d at 875–77. Together, the restrictive "legal mail" definition advocated by the Defendants and the postcard-only policy essentially prevent attorneys from writing confidential letters to inmates about the conditions at the Jail during the investigative stages of a legal matter. Precluding this pre-litigation correspondence and investigation, at the very least, chills important First Amendment rights. *See Jones*, 569 F.3d at 268 ("legal mail" includes legal communication that "implicate[s] the right to petition for grievances and the right of access to the courts"); *In re Primus*, 436 U.S. 412, 432 (1978) ("The First and Fourteenth Amendments require a measure of protection for 'advocating lawful means of vindicating legal rights,' including 'advis[ing] another that his legal rights have been infringed and refer[ring] him to a particular attorney or group of attorneys . . . for assistance.'") (quoting *N.A.A.C.P. v. Button*, 371 U.S. 415, 434, 437 (1963)) (internal citations omitted). Moreover, the Jail's treatment of the ACLU letters in this case further illustrates why protecting this type of communication is important—the letters related directly to potential legal action against the same individuals who screen incoming legal correspondence (including Jail Administrator Cremonte); and, during the screening process, at least one letter (which, again, was conspicuously marked "legal mail") was read by Jail staff and forwarded to Jail attorneys without any notice to the sender or intended recipient. This is precisely why confidential pre-litigation correspondence must be protected.

To counter this, the Defendants argue that the ACLU's letters are similar to solicitations, and they have no duty to help the ACLU solicit potential clients. Appellant Br. at 9. But this is largely beside the point—again, an attorney must be able to communicate with an inmate in confidence before litigation and before establishment of a formal attorney-client privilege in order to offer legal advice or determine whether an actionable claim exists. This is precisely what the ACLU was attempting to do here. More broadly, this argument goes to the content of the letters; a system in which the Jail may *first independently screen* the substance of the legal

communication from an attorney to a specific inmate regarding the constitutionality of jail policies would defeat the very reason to protect legal mail—to safeguard sensitive and confidential legal communication. Of course, this means the Jail would not know the contents of the communication, but this is true of all legal mail. Moreover, none of this prevents the Jail from opening the mail in the inmate's presence to ensure the letter does not contain contraband; rather, the Jail must simply treat the ACLU letters just like it treats legal mail generally. Thus, because the ACLU letters at issue were marked "legal mail," bore the name and bar number of a licensed attorney, and offered legal assistance and advice regarding the conditions at the jail, the letters are "legal mail" as a matter of law.

The Defendants argue that, even if we hold that the letters qualify as "legal mail," the district court erred because it failed to analyze the Jail's mail policies under *Turner v. Safley*, 482 U.S. 78 (1987).[2] Appellant Br. at 44. In *Turner*, the Supreme Court explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests" and set out four factors to aid in making this determination. 482 U.S. at 89. But under the Jail's written mail policy here, "bona-fide legal mail" is not subject to the postcard requirement; instead, "mail from attorneys" may be enclosed in an envelope and should be opened in the presence of the inmate. R. 29-3 (Inmate Rules and Regulations at 3) (Page ID #597). The Jail's regulations do not define "bona-fide legal mail" or "mail from attorneys." Instead, only the implementation of the policy by Jail Administrator Cremonte—who was sued in his individual and official capacities—limits "legal mail" as set forth by the Defendants. R. 1-9 (Cremonte Dep. at 100–03) (Page ID #89–90). Thus, because we hold that the ACLU letters at issue are indeed "legal mail," the Jail must deliver the letters pursuant to, and consistent with, the Jail's written mail regulations. This does not render the Jail's mail regulations invalid—the concern in *Turner*—and Cremonte's implementation of the Jail's policy is not automatically attributed to the Jail.[3] Consequently, the

---

[2]The Defendants claim that a remand as to this issue is necessary because the preliminary injunction was based on "incomplete factual findings and legal research." Appellant Reply at 15. But the parties briefed the *Turner* factors at the district court level and had the opportunity to present evidence relating to the issue, and the Defendants never claimed that they were denied the opportunity to present evidence or legal arguments prior to the injunction. We thus reject this argument.

[3]At this stage in the litigation, no evidence or argument was presented as to *Monell* liability based on Cremonte's actions. *See Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("Official municipal policy includes

ACLU is likely to succeed because the Jail must deliver the mail unread based on its own policy for handling legal mail, which is what the district court's injunction requires. *See* R. 34 (D. Ct. Op. at 17) (Page ID #637); *see also Lavado*, 992 F.2d at 610 ("[D]isregard for established regulations [relating to the delivery of legal mail] give rise to an inference of arbitrary or capricious action."); *Sallier*, 343 F.3d at 874 ("[W]hen the incoming mail is 'legal mail,' we have heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail.").

In any event, even if we apply *Turner*, the injunction is proper. The purpose of the *Turner* factors is to help courts determine whether a prison policy "is reasonably related to legitimate penological interests." 482 U.S. at 89. Under the first factor, "there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (internal quotation marks omitted). Without this, the policy is unconstitutional, and "the other factors do not matter." *Muhammad*, 35 F.3d at 1084. The remaining three factors balance: "whether there are alternative means of exercising the right that remain open to prison inmates"; "the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and whether there are "ready alternatives" available "that fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 90–91.

Here, the main Jail policies at issue are Cremonte's determination that "legal mail" does not include mail from an attorney to a specific inmate that includes the attorney's name and bar number and is marked "legal mail" where: (1) an investigation by Jail personnel does not indicate an attorney-client relationship and a "legitimate legal matter"; or (2) the mail is from an attorney from outside of the county sent to "four or five inmates."[4] R. 1-9 (Cremonte Dep. at 28–32, 102–03) (Page ID #86–87, 90). The Defendants argue that abandoning these policies would "invite[] misuse and abuse of the legal mail procedures." Appellant Br. at 51–52. For

---

the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978))).

[4]Because the policies advocated by the Defendants on appeal are not contained in the Jail's written mail regulations, we assume for purposes of this analysis that Cremonte's policies are attributed to the Jail under *Monell*.

example, the Defendants claim that attorneys could use the mail to correspond with inmates regarding non-legal issues; attorneys could smuggle contraband to inmates or pass along escape plans; or imposters could bypass inspection of ordinary mail by using fictitious names or by surreptitiously masquerading as actual attorneys or law firms. *Id*. at 52. The Defendants further argue that the volume of incoming legal mail would increase, which would increase the burdens on Jail personnel. *Id*. at 52–53.

We see no valid connection between these policies and a legitimate interest. Nothing in the record suggests that the parade of horribles advanced by the Defendants would occur if the Jail is required to deliver properly marked legal mail sent in an envelope from an attorney to a specific inmate—a policy entirely consistent with the Jail's written policies. *See* R. 29-3 (Inmate Rules and Regulations at 3) (Page ID #597) (indicating "mail from attorneys" is "bona-fide legal mail" and not subject to the postcard requirement). As the Defendants admit, the Jail does not actually read "legal mail," so a motivated attorney can already misuse the mail system as the Jail suggests. With that said, requiring that any letter marked "legal mail" include an attorney's name and bar number would drastically reduce the likelihood that these types of criminal and/or unethical actions occur. Similarly, under Cremonte's current policies an individual can masquerade as an actual attorney who is representing an inmate to purport to satisfy the "legal mail" definition advocated by the Defendants. And all mail—even "bona-fide legal mail" under the Defendants' definition—is inspected for contraband. Finally, the Defendants offer no evidence suggesting that the volume of attorney mail would increase based on a change to the definition of legal mail; and even if it did, the increase would be justified because inmates have a right to correspond with attorneys pre-litigation about legal matters. *See Muhammad*, 35 F.3d at 1085 & n.3 (rejecting the prison's interests in the mail policy under the first *Turner* factor because "there is no evidence in the record supporting Defendants' factual claim that the Attorney General's Office sends a substantial amount of mail to inmates" and noting that any increase would be justified in any event).

Indeed, rather than bear a rational connection to a legitimate interest, the policies at issue are arbitrary, untenable, and unnecessarily impinge on important First Amendment rights. *See Turner*, 482 U.S. at 89–90 ("[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or

irrational."). The Jail's "investigation" into whether an attorney represents an inmate is entirely incomplete. The record suggests that Jail personnel ask the inmate about the letter, and if they are unsatisfied with the answer, call an unknown circuit court or judicial aide. But they do not call any federal courts or state appellate courts in Michigan; it follows that they do not contact courts outside of Michigan. Following this incomplete investigation, Jail personnel make a "subjective" and inexpert determination as to whether a particular legal matter is "legitimate." R. 1-9 (Cremonte Dep. at 103) (Page ID 90). It is unclear how Jail staff make this determination, but if they believe the mail does not involve a legitimate legal matter, mail from a licensed attorney to a specific inmate that is marked "legal mail" is not delivered and neither the sender nor the intended recipient receives notice of the nondelivery. *See, e.g.*, *id*. at 106 (Page ID #91) (Cremonte explaining that he did not deliver a particular letter to an inmate because "I know all of the attorneys . . . I know all of his cases and you don't represent [the inmate].").[5] Furthermore, the Jail will not deliver mail marked "legal mail" from an attorney who practices outside of the county that is addressed to "four or five inmates." *Id*. at 30 (Page ID #87). Why an out-of-county attorney cannot send legal mail to over four inmates at a time is entirely unclear.

What is clear, however, is that the sweeping scope of these arbitrary policies bears little connection to any legitimate interests and improperly impinges legal communication that deserves "heightened" protection under the First Amendment. *Sallier*, 343 F.3d at 874. Thus, the policies at issue fail under the first *Turner* factor and so "the other factors do not matter." *Muhammad*, 35 F.3d at 1084 (citing *Turner*, 482 U.S. at 89–90). As a result, even under *Turner*, the ACLU is likely to succeed on its First Amendment claim.

## 2. Fourteenth Amendment Claim

On appeal, the Defendants also argue that the ACLU is not likely to succeed in its Fourteenth Amendment claim. In its verified complaint, the ACLU alleges that the Defendants violated their Fourteenth Amendment procedural-due-process rights by blocking delivery of the

---

[5]The Defendants explained at oral argument that the Jail's inmate population is roughly 250 inmates, with an average stay of roughly 15 days per inmate. Given the inmate population and turnover rate, common sense dictates that an inmate may be involved in a legal matter that is unknown to Cremonte and his staff, that involves an attorney from out of the county, or that is pending in a court other than the "circuit court" noted by Cremonte.

ACLU letters without providing the ACLU or the intended recipient notice and an opportunity to contest the decision.  R. 1 (Comp. at 13) (Page ID #13).  Indeed, it appears that the Jail does not provide notice when it does not deliver a letter pursuant to its mail intake policy.  R. 1-9 (Cremonte Dep. at 107) (Page ID #91); *see Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986) (holding a mail censorship regulation must "provide that notice of rejection be given to the inmate-recipient," "require that notice and an opportunity to protest the decision be given to the author of the rejected letter," and "provide for an appeal of the rejection decision to an impartial third party prior to the letter being returned."); *Procunier v. Martinez*, 416 U.S. 396, 418 (1974) ("[T]he decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards" because "[t]he interest of prisoners and their correspondents in uncensored communication by letter . . . is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment."), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).  At oral argument in this case, the Defendants conceded that if the ACLU letters at issue were, in fact, "legal mail," the Fourteenth Amendment procedural-due-process rights asserted by the ACLU apply.  Accordingly, because we hold the letters are "legal mail" as set forth above, the ACLU is also likely to succeed on its Fourteenth Amendment claim.

## B.  Balance of the Remaining Factors

Because the ACLU is likely to succeed on its constitutional claims, there is "no issue as to the existence of the remaining preliminary injunction factors."  *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010).  As we have explained, "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief."  *Id.* (internal quotation marks omitted).  Similarly, "[w]hen a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights."  *Id.* (internal quotation marks omitted); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) ("When constitutional rights are threatened or impaired, irreparable injury is presumed."); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001) ("[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment.").  In any event, as set forth above, the Defendants'

arguments relating to irreparable harm and the balance of equities—*e.g.,* that the burden will "adversely impact the operation and administration of the Jail," Appellant Br. at 50—are not persuasive.  As a result, the district court did not abuse its discretion in finding the remaining factors support granting the preliminary injunction.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's preliminary injunction.