# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) | DIVISION ONE |
|  | ) | No. 74711-8-I |
| DAVID JOSEPH PEDERSEN, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) | FILED: November 27, 2017 |
|  | ) |  |

DWYER, J. — David Pedersen filed this personal restraint petition (PRP) claiming that the Department of Corrections (DOC) subjected him to unconstitutional conditions of confinement. His claims stem from his incarceration in high-security, intensive management units as well as from his later incarceration in the general prison population. We conclude that several of Pedersen's claims are moot and that his remaining claims either fail on the merits or cannot be considered because alternative civil remedies may be available to him that would be adequate under the circumstances.

Accordingly, we dismiss the petition.

I

Pedersen pleaded guilty in 2012 to committing multiple counts of aggravated murder. He was sentenced in the Snohomish County Superior Court to incarceration for life without the possibility of parole.

Between 2012 and 2015, Pedersen was incarcerated in a high-security, intensive management unit separated from the general prison population—first, at the Monroe Correctional Complex and, later, at the Washington State Penitentiary in Walla Walla. Pedersen was incarcerated in the intensive management units because of his aggravated murder convictions and his involvement with a known threat organization.

In March 2015, Pedersen was transferred to the general prison population at the state penitentiary.

Pedersen submitted this PRP nearly one year later, in February 2016, asserting that he suffers from unlawful restraint as a result of unconstitutional conditions of confinement.

II

We first address DOC's contention that we cannot consider the constitutional challenges to confinement set forth in Pedersen's PRP because Pedersen has another available remedy at law against DOC in the form of a civil rights action pursuant to 42 U.S.C. § 1983. DOC is incorrect.

RAP 16.4(d) restricts the relief that we may grant through a PRP. It provides, in pertinent part, "The appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances."

We have previously rejected DOC's contention that a § 1983 action is an adequate alternative remedy to a PRP. In re Pers. Restraint of Arseneau, 98

Wn. App. 368, 989 P.2d 1197 (1999). We again emphasize that a § 1983 action is not an adequate alternative remedy against DOC.

Section 1983 provides a civil cause of action against any "person" who deprives another of "any rights, privileges, or immunities secured by" the United States Constitution. Significantly, however, a state—including agencies of a state—is not a "person" within the meaning of § 1983. Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 617, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002); Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Wash. State Republican Party v. Pub. Disclosure Comm'n, 141 Wn.2d 245, 285-86, 4 P.3d 808 (2000); Smith v. State, 135 Wn. App. 259, 270, 144 P.3d 331 (2006).

In this light, if Pedersen were to file a § 1983 action against DOC, his claim would be dismissed. Plainly, obtaining relief through a § 1983 action against DOC is not a remedy available to Pedersen that is adequate under the circumstances.

A § 1983 action is an inadequate alternative remedy for yet another reason. If Pedersen were compelled to bring his constitutional claims in federal court in a § 1983 action, he would be precluded from vindicating his state constitutional rights:

> Section 1983 codified the Civil Rights Act of 1871, the purpose of which was "to enforce the provisions of the fourteenth amendment to the Constitution of the United States." Monell [v. Dep't of Soc. Servs.], 436 U.S. [658,] 665, [98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)] (quoting H.R. 320). The Civil Rights Act and the Fourteenth Amendment, were passed following the end of the Civil War to ensure that the rights of citizens secured by the federal Constitution were upheld by all the states. Neither the Act nor the Amendment

> addresses the rights secured to citizens by the individual state constitutions. *Accordingly, a claimed violation of a state constitutional right is not cognizable under § 1983.* Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004) ("Section 1983 does not provide a cause of action for violations of state statutes."); Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994) (holding that a violation of a state constitutional right does not give rise to a federal cause of action under § 1983); Bills v. Henderson, 631 F.2d 1287, 1298-99 (6th Cir. 1980) (concluding that violation of a state procedural rule is not actionable in a § 1983 suit).

Radvansky v. City of Olmsted Falls, 395 F.3d 291, 313-14 (6th Cir. 2005) (emphasis added). Thus, if we were to adopt DOC's argument, Pedersen would not have a forum in which to vindicate his state constitutional rights.

Accordingly, a § 1983 action against DOC is not an adequate alternative remedy available to Pedersen. DOC's claim fails.

III

Pedersen contends that he was subjected to unconstitutional conditions of confinement during his incarceration in intensive management units and in the general prison population. We address his claims as to each category of incarceration in turn.

A

Pedersen alleges that, while incarcerated in the intensive management unit at the Monroe Correctional Complex and at the Washington State Penitentiary, DOC subjected him to unconstitutional conditions of confinement.

"Bringing a successful claim in a PRP requires 'a showing of restraint and an unlawful aspect of the restraint.'" Arseneau, 98 Wn. App. at 371 (quoting In re Pers. Restraint of Metcalf, 92 Wn. App. 165, 172, 963 P.2d 911 (1998)). "A

petitioner is under a 'restraint' if the petitioner has limited freedom because . . . the petitioner is confined." RAP 16.4(b). A restraint is unlawful when "[t]he conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(6).

The relief available in a PRP is limited to "the removal of the illegal restraint." In re Pers. Restraint of Sappenfield, 138 Wn.2d 588, 595, 980 P.2d 1271 (1999). As indicated, the circumstances under which we may grant relief through a PRP are limited by RAP 16.4(d), which provides that "[t]he appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances."

In addition, we do not consider moot claims raised in a PRP. In re Pers. Restraint of White, 25 Wn. App. 911, 912, 612 P.2d 10 (1980). A claim "is moot if a court can no longer provide effective relief." In re Cross, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983) (citing State v. Turner, 98 Wn.2d 731, 733, 658 P.2d 658 (1983)).

1

Pedersen first contends that he was subjected to unconstitutional conditions of confinement because DOC denied him adequate outdoor exercise facilities while he was housed in the intensive management unit. However, in his petition, Pedersen acknowledges that, as of March 2015, he was housed with the

state penitentiary's general prison population, rather than in the intensive management unit.[1]

Because Pedersen is no longer incarcerated in the intensive management unit, he is no longer subject to the allegedly unconstitutional conditions of confinement from which he sought relief through his petition. We thus cannot provide effective relief to Pedersen. His claim is moot.[2]

2

Pedersen next contends that he was subjected to unconstitutional conditions of confinement because, while incarcerated in the intensive management unit, DOC correctional officers confiscated incoming mail containing legal correspondence, newspaper clippings, paper copies of photographs, and correspondence study books, confiscated incoming mail that was sent to him in a padded envelope, and unlawfully opened his legal correspondence outside of his presence. He also contends that, while he was incarcerated in the intensive management unit, DOC violated his right to court access by not providing him with adequate writing materials.

Pedersen's claims are moot. As indicated above, Pedersen is no longer incarcerated in the intensive management unit. In this way, Pedersen is no longer subject to DOC policies regarding incoming mail and personal property for inmates housed in intensive management units. In addition, Pedersen does not

---

[1] Pedersen's petition does not contend that the outdoor recreational facilities provided to him while housed with the general prison population are inadequate.

[2] In addition, Pedersen has not shown that this issue is likely to recur. DOC's appellate briefing indicates that it has submitted a budget request with the legislature seeking to obtain funds to build additional outside recreational spaces for inmates housed in its intensive management units.

show that, while incarcerated in the general prison population, he is beholden to DOC correctional officers in the intensive management units who allegedly did not follow DOC policies.

Furthermore, insofar as Pedersen requests that we order that DOC return the items that were allegedly confiscated from him, Pedersen's petition does not set forth that DOC has retained those items in its possession.[3] Plainly, we cannot grant effective relief to Pedersen when he has not set forth that DOC has retained in its possession the items that he seeks.

Moreover, insofar as Pedersen believes that DOC correctional officers' alleged acts have injured him, he may wish to seek damages, but "it is well settled that a demand for monetary damages is not actionable by personal restraint petition." In re Pers. Restraint of Williams, 171 Wn.2d 253, 256, 250 P.3d 112 (2011) (citing Sappenfield, 138 Wn.2d at 595). Thus, we cannot grant effective relief to Pedersen as to these claims because he has not shown that he is still subject to the allegedly unlawful restraint of which his petition complained.

Additionally, even if we could grant Pedersen effective relief as to his claims, we are barred from doing so because Pedersen has adequate alternative remedies against DOC in a civil action. RAP 16.4(d). Indeed, if Pedersen seeks return of his incoming mail that he alleges that DOC wrongfully confiscated, he has an adequate alternative remedy in a state court civil action against DOC. Insofar as Pedersen believes that certain DOC policies are unconstitutional or

---

[3] Indeed, at least with regard to Pedersen's correspondence study books, DOC has indicated the books were destroyed.

that DOC correctional officers require additional training in its policies, he has an adequate alternative remedy in a state court civil action against DOC.

Thus, we cannot grant relief as to Pedersen's claims.

B

Pedersen next contends that, while incarcerated in the general prison population, DOC correctional officers, pursuant to DOC policies, rejected legal mail that was sent to him but did not include his prisoner identification number as part of the mailing address and confiscated a copy of a judicial opinion that was mailed to him by his attorney, rather than by an authorized publisher or vendor. Pedersen further contends that DOC, in violation of its policies, did not notify him that his incoming mail containing the copy of the judicial opinion in question was rejected.

1

Pedersen contends that he is subject to an unconstitutional condition of confinement in violation of his right to free speech because DOC rejected legal correspondence sent to him because the mailing address did not include his prisoner identification number.

"A prisoner retains those First Amendment rights that are consistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." In re Pers. Restraint of Parmelee, 115 Wn. App. 273, 281, 63 P.3d 800 (2003) (citing Jones v. N. C. Prisoners' Labor Union Inc., 433 U.S. 119, 129, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977)). "As a condition of confinement, an inmate's First Amendment right to send and receive mail lawfully

may be restricted by prison regulations reasonably related to legitimate penological interests." Livingston v. Cedeno, 164 Wn.2d 46, 56, 186 P.3d 1055 (2008) (citing Thornburgh v. Abbott, 490 U.S. 401, 407, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989); Turner v. Safley, 482 U.S. 78, 95, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)).

When determining whether a prison regulation restricting an inmate's mail is reasonably related to legitimate penological goals, we consider the four factors set forth in Turner:

> "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Second, courts consider whether there are "alternative means of exercising the [constitutional] right that remain open to prison inmates." Third, courts consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." And fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation."

Parmelee, 115 Wn. App. at 282 (alteration in original) (citations and internal quotation marks omitted) (quoting Turner, 482 U.S. at 89-90).

Pedersen challenges DOC Policy 450.100. It reads, "All incoming mail must include the offender's full committed name and DOC number."

Addressing the first Turner factor, there is a valid, rational connection between DOC's identification number policy and DOC's interest in prison security. DOC has 16,000 inmates in its custody and many inmates have the same or a similar name. Given that, DOC states that its identification number mailing policy arises from its interest in avoiding security concerns that would arise if an inmate's mail were accidentally delivered to a different inmate.

Indeed, DOC acknowledges that a security concern arose in the past where an inmate's mail, identifying the inmate as a sex offender, had been mistakenly delivered to another inmate. As a result, the inmate for whom the mail was intended had to be placed in protective segregation. In this way, a valid, rational connection exists between DOC's prisoner identification incoming mail policy and DOC's stated security interest. The first Turner factor is satisfied.

The second Turner factor concerns whether Pedersen has alternative means for exercising his constitutional right. There is no dispute that, after his prisoner identification number was included in the mailing, Pedersen later received the mail in question from his attorney. Therefore, Pedersen clearly has alternative means of exercising his constitutional right to receive mail. The second Turner factor is satisfied.

The third and fourth Turner factors also weigh in DOC's favor. If DOC were to accommodate Pedersen by removing its requirement that incoming mail set forth a prisoner identification number, the risk of delivering mail to the wrong inmate would remain and the burden on DOC to sort through the mail of similarly named inmates would be significant. Moreover, there is an absence of readily available alternatives that would be as effective as DOC's current policy at balancing the inmate's constitutional right to receive mail and DOC's stated security interest.[4]

---

[4] Pedersen suggests that a readily available alternative to DOC's policy exists in the form of requiring that an inmate's incoming mail set forth a mailing address with the inmate's name and number associated with the inmate's prison cell. However, Pedersen's suggestion ignores the possibility that the inmate for whom the mail was intended could change prison cells based on the inmate's behavior or other security concerns. Pedersen's suggestion appears less effective than does DOC's challenged policy.

Thus, DOC's incoming mail policy is reasonably related to a legitimate penological interest and does not deprive Pedersen of his right to free speech.[5] Pedersen's claim fails.[6]

2

Pedersen next contends that, while he was incarcerated in the general prison population, DOC subjected him to an unconstitutional condition of confinement by confiscating a copy of a judicial opinion that was mailed to him by his attorney.

As a preliminary matter, Pedersen requests that we order DOC to return the confiscated copy of the judicial opinion to him. But Pedersen does not provide us with a basis to determine that DOC still possesses the copy of the judicial opinion. Because he has not made such a showing, we cannot provide him effective relief as to this claim. Moreover, even if we could provide effective relief as to Pedersen's claim, RAP 16.4(d) bars us from considering his claim

---

[5] Pedersen relies on two federal circuit court decisions to support his claim that DOC's incoming mail policy is unconstitutional. Neither are availing.

Pedersen first relies on Am. Civil Liberties Union Fund of Michigan v. Livingston County, 796 F.3d 636, 643 (6th Cir. 2015), for the claimed proposition that *any* correctional official action regarding incoming legal mail is subject to heightened scrutiny. To the contrary, the Am. Civil Liberties Union Fund of Michigan decision instead regarded the "'heightened concern with allowing prison officials unfettered discretion *to open and read an inmate's [legal] mail.*'" 796 F.3d at 643 (emphasis added) (quoting Sallier v. Brooks, 343 F.3d 868, 874 (6th Cir. 2003)). Thus, Pedersen's reliance is inapposite.

Pedersen next relies on Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001), for the claimed proposition that an inmate is deprived of the right to free speech when the inmate for whom incoming mail is intended is clearly identifiable by the mailing and the inmate's mail is nevertheless rejected. However, the Morrison court plainly elected *not* to decide that precise issue. 261 F.3d at 906. Thus, Pedersen's reliance on Morrison is unavailing.

[6] Pedersen also contends that DOC violated his due process right when one of its correctional officers did not notify him that the legal mail sent without his prisoner identification number as part of its mailing address had been rejected. Pedersen's claim fails. The same rationale that supports DOC's prisoner identification number policy also supports a DOC policy to not notify an inmate that it had rejected improperly addressed incoming mail.

- 11 -

because he has an adequate alternative remedy available to him in the form of a state court civil action against DOC.

Pedersen next contends that DOC's policy to confiscate copies of judicial opinions sent by third parties is an unconstitutional condition of confinement because he is unable to access the judicial opinion in question through the state penitentiary's legal resources. In this way, Pedersen's claim is less in regard to DOC's mail rejection notification policy and more in regard to the adequacy of the legal resources available to him in the state penitentiary. But Pedersen has not provided us with any basis to determine that DOC's contract with its legal resource providers in the state penitentiary is inadequate or showing other such grounds that would allow us to grant effective relief. Thus, Pedersen's claim fails.

3

Pedersen next contends that he was subjected to an unconstitutional condition of confinement because, while housed in the general prison population, DOC did not provide him with a rejection notice regarding his incoming mail containing the copy of the judicial opinion that had been mailed to him by his attorney. To be clear, with regard to this claim, Pedersen does not challenge the constitutionality of the DOC policy to notify inmates when properly addressed incoming mail is rejected. Rather, Pedersen challenges the single alleged instance in which a DOC correctional officer did not notify him that the incoming mail in question was rejected.

"[A]n inmate 'has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities.'" Sorrels v. McKee, 290 F.3d 965, 972 (9th Cir. 2002) (quoting Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999)). However, "the existence of . . . constitutional issues alone does not excuse . . . potential mootness problems." State v. Cruz, No. 93732-0, slip op. at 13 (Wash. Nov. 2, 2017) http://www.courts.wa.gov/opinions/pdf/937320.pdf.

Pedersen's claim relies on a single incident that occurred to him in the past. His petition does not show that this incident has a likelihood of recurring. We thus cannot provide effective relief as to Pedersen's claim.

Accordingly, Pedersen's petition is dismissed.

Dwyer, J.

We concur:

Trickey, ACJ

Cox, J.

- 13 -